724 F.Supp. 404 (1989)
Lusby MOWBRAY, Sadie Mowbray, et al., individually and on behalf of all others similarly situated, Plaintiffs,
v.
Bruce U. KOZLOWSKI, individually and in his official capacity as Director of the Virginia Department of Medical Assistance, et al., Defendants.
Civ. A. No. 89-0014-H.
United States District Court, W.D. Virginia, Harrisonburg Division.
October 25, 1989.
*405 John M.A. DiPippa and John E. Whitfield, Blue Ridge Legal Services, Inc., Harrisonburg, Va., Claire E. Curry, Charlottesville-Albemarle Legal Aid Soc., Charlottesville, Va., Jeanne Finberg, Nat. Sr. Citizens Law Center, Los Angeles, Cal., Margaret T. Schenck, Client Centered Legal Services of Southwest Va., Inc., Castlewood, Va., and James W. Speer, Central Va. Legal Aid Soc., Inc., Richmond, Va., for plaintiffs.
Virginia Manhard, Asst. Atty. Gen., Richmond, Va., E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., and David R. Smith, Office of General Counsel, Dept. of Health and Human Services, Washington, D.C., for defendants.

MEMORANDUM OPINION
MICHAEL, District Judge.
Plaintiffs in this case seek a declaration that the Commonwealth of Virginia's Medicaid eligibility guidelines violate Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., that the Commonwealth's resource methodologies applied to Qualified Medicare Beneficiaries also violate Title XIX, and that the Virginia Medicaid Eligibility Appeals Board's refusal to consider arguments concerning federal law during administrative appeals violates both Title XIX and plaintiffs' rights under the Fourteenth Amendment. Plaintiffs seek to have this declared a class action, and they additionally seek injunctive relief and attorney's fees. Currently before the court are motions to dismiss, or in the alternative for summary judgment, filed by the defendants, plaintiffs' cross motion for summary judgment, and plaintiffs' motion for certification of a class action. These claims are brought under 42 U.S.C. § 1983, and this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3). Declaratory relief is authorized by 28 U.S.C. § 2201. The issues have been exhaustively briefed, and the parties were heard at oral argument on August 9, 1989. This case is now ripe for disposition. For the reasons detailed more fully below, the court will certify this case as a class action and grant the plaintiffs' motion for summary judgment.
The four original plaintiffs in this case have been joined by an additional six, and two of the original named plaintiffs have been dismissed as they have become eligible for Medicaid in the interim. Thus, there are currently eight named plaintiffs. The original defendant is the Director of the Virginia Department of Medical Assistance Services ("DMAS"), sued in both his personal and official capacities (the "state defendant"). On February 10, 1989, after hearing oral argument from both sides, the court granted the plaintiffs' application under Rule 65, Fed.R.Civ.P., for a temporary restraining order preventing the defendant from applying to the named plaintiffs a Medicaid resource methodology any more restrictive than that allowed by SSI. By *406 agreement of counsel this order has been continued in effect pending the resolution of the issues currently before the court. Also at the February hearing, the court directed that the Secretary of Health and Human Services (the "federal defendant") be joined as a party defendant.

I

Preliminary Matters
Before proceeding to the merits of the statutory claim several procedural matters must be disposed of. The state defendant has moved to dismiss the action against him on two grounds. First, he argues that the suit against him in his official capacity should be dismissed as a suit against the state in violation of the Eleventh Amendment's bar of sovereign immunity. This claim is easily disposed of. "`[O]fficial-capacity actions for prospective relief are not treated as actions against the state.'" Will v. Michigan Dept. of State Police, ___ U.S. ___, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989), quoting Kentucky v. Graham, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). See, e.g., Virginia Hospital Assoc. v. Baliles, 868 F.2d 653, 662 (4th Cir.), cert. granted, ___ U.S. ___, 110 S.Ct. 49, 107 L.Ed.2d 18 (1989). Since plaintiffs in the present case seek only prospective, injunctive relief the Eleventh Amendment is not implicated. That this prospective, injunctive relief may have a substantial impact on the Commonwealth's treasury does not alter the situation. "[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Papasan v. Allain, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986) (citations omitted). The state defendant's motion to dismiss the case against him in his official capacity will be denied.
Secondly, the state defendant seeks to have the case against him in his personal capacity dismissed; this requires the court to plumb murkier depths. The state defendant's first contention is that the amended complaint fails to state a claim against him in his individual capacity. What has been called the "fiction" of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), is that when an official acts outside of the law he is stripped of his official position and is treated as an individual, and thus subject to personal liability for his previously "official" actions. Virginia Hospital Assoc., 868 F.2d at 662, makes it clear that the doctrine of Young is alive and well, and that it is the proper method under which to analyze this type of case. While it is true that the plaintiffs do not seek monetary relief from the defendant in his personal capacity, that does not mean that they do not state a claim against him. The state defendant's motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., is denied.
The state defendant's second contention is that he is entitled to a qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and the case should therefore be dismissed. Plaintiffs argue that since no damages are sought from the defendant, the suit seeking only injunctive relief, the doctrine of qualified immunity is inapplicable.
Under Harlow, state officials are protected by qualified immunity if the conduct complained of by the plaintiffs "did not violate clearly established statutory or constitutional rights of which a reasonable person should have been aware." Giancola v. West Virginia Dept. of Pub. Safety, 830 F.2d 547, 550 (4th Cir.1987). As initially stated, qualified immunity provided officials protection from suits for damages. Harlow, 457 U.S. at 806, 102 S.Ct. at 2732. However, in Mitchell, the court spoke in more expansive language. Qualified immunity is "immunity from suit rather than a mere defense to liability; and like absolute immunity it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815. Basing his argument on this language, the state defendant argues that qualified immunity bars all suits against him, even those that seek only equitable relief.
*407 Few courts have addressed the question of whether qualified immunity bars suits against officials in their individual capacity which seek only injunctive relief. See Akins v. Board of Gov. of State Colleges and Univ., 840 F.2d 1371, 1378 (7th Cir.), vacated on other grounds, ___ U.S. ___, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988) (court notes sparsity of cases and questions lower court's conclusion that qualified immunity applies in such suits). However, it appears to the court that qualified immunity should not bar this type of case. As a starting point, several of the Circuit Courts have noted that qualified immunity is inapplicable in actions seeking equitable relief. See, De Abadia v. Izquierdo Mora, 792 F.2d 1187, 1188 n. 1 (1st Cir.1986) ("Qualified immunity is, of course, no defense to equitable relief"); Tubbesing v. Arnold, 742 F.2d 401, 403-404 (8th Cir.1984) (qualified immunity would entitle defendant to summary judgment on damages, but the defendant "would still be required to defend itself in any trial involving ... equitable relief"). The Fourth Circuit has reached the same conclusion. Bever v. Gilbertson, 724 F.2d 1083, 1086 (4th Cir.), cert. denied, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984) ("[T]he appellants have no immunity from being put to trial on the equitable claims"). See, e.g., Young v. Lynch, 846 F.2d 960, 962 (4th Cir.1988); Rowley v. McMillan, 502 F.2d 1326, 1332 (4th Cir. 1974).
While the language in these cases at first appears dispositive, all of them involved suits against officials in both their personal and official capacities and the context of the quotations does not make clear to what capacity the prohibition applies. However, it is settled that qualified immunity can only be raised in personal capacity suits; it is not available to persons sued in their official capacity. Graham, 473 U.S. at 167, 105 S.Ct. at 3105-06. Therefore, when the court in Bever said that qualified immunity did not bar trials in suits seeking only equitable relief, it must have meant suits brought against an official in his personal capacity. The state defendant's motion to dismiss the suit against him in his personal capacity on the basis of qualified immunity must, therefore, be dismissed since qualified immunity is not available where only equitable relief is sought.
The federal defendant has moved to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that the amended complaint fails to state a claim against him. The plaintiffs do not oppose this motion. Ordinarily, the court would not deny such an unopposed motion; however, the Secretary was joined on the court's recommendation and the court will deny the motion for the following reasons. Rule 19(a), Fed.R.Civ.P., governs joinder of necessary parties. Under 19(a) a person shall be joined if he is subject to service of process, and joinder will not destroy jurisdiction, and the following conditions are met: "(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest."
The Secretary certainly has an interest in the statute which gives rise to this action. The federal defendant, in the appropriate circumstances, is given broad discretion in interpreting the Medicaid statute. Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). The Secretary's interpretation, in turn, has important effects on the behavior of others, such as the state defendant in this case, since the Secretary's reading of the statute often determines what actions will be taken by the states. Giving the Secretary the opportunity to present his interpretation of the statute seems the best way to preserve his interest and to give the court the benefit of his insights. Therefore, the motion of the federal defendant to dismiss the claims against him, will be denied since the court finds him to be a necessary party.
Since the decision of the remaining issues on the merits requires extensive use of material outside of the pleadings, the defendants' motions will be considered as motions for summary judgment. See Fed. R.Civ.P. 12(b). The parties do not dispute any of the underlying facts in this case, material or otherwise. The only dispute *408 concerns the meaning of various statutes, the resolution of which is a matter of law. Summary judgment is appropriate. Fed.R. Civ.P. 56.

II

History
The Supreme Court was entirely accurate when it referred to the Medicaid statute, which lies at the core of this action, as both "Byzantine," and "almost unintelligible to the uninitiated." Schweiker, 453 U.S. at 43, 101 S.Ct. at 2640 (citations omitted). And as this case proves, it often appears unintelligible even to those who must work with it every day. While an explanation of the background of the statute may not reduce the tedium one experiences, it is helpful in gaining an understanding of the issues in this case.
In 1965, Congress created two programs to help defray the costs of health care for needy Americans. The first, authorized by Title XVIII of the Social Security Act ("SSA"), was Medicare. This program was intended to help elderly and disabled people pay for hospital and doctor bills. This program is financed and administered entirely by the federal government, and almost every American over the age of 65 is eligible. The second program, authorized by Title XIX of the SSA, was Medicaid. This program was created to provide access to health care for the poor. Unlike Medicare, Medicaid is an optional, joint federal-state program available to those states which choose to participate. States which do participate are required to adhere to federal guidelines, 42 U.S.C. § 1396, "and must comply with the requirements imposed by the Act itself and the Secretary of Health and Human Services." Schweiker, 453 U.S. at 36-37, 101 S.Ct. at 2636-37.
Two kinds of recipients receive Medicaid. The first group, the "categorically needy," are those already receiving general welfare payments under several federal programs.[1] The Medicaid laws require all participating states to provide benefits to the categorically needy. The second category is the "medically needy." These are people whose income is too high to qualify for one of the categorical programs, but who otherwise meet all the remaining categorical requirements. In order to qualify as medically needy, a person's income and assets must be insufficient to meet the cost of necessary medical or remedial healthcare. Providing assistance for the medically needy was optional even for those states which chose to participate in the general Medicaid program. However, if a state elected to supply benefits to both the categorically needy and the medically needy, it had to use the same eligibility standards for each. See Morris v. Morrow, 783 F.2d 454, 456 (4th Cir.1986), and cases cited therein.
In 1972 Congress enacted the Supplemental Security Income Program ("SSI"), 42 U.S.C. § 1381, et seq. This legislation was designed to federalize three of the four programs which provided benefits to the categorically needy. The new SSI eligibility criteria were more lenient than some of the previously established state criteria. Thus, in some states, SSI had the potential greatly to increase the number of people on Medicaid (since under Medicaid the same standards must be applied to both the categorically and medically needy and the states were bound by SSI guidelines as to the categorically needy) with a corresponding financial burden on the state treasuries. Congress, perhaps fearing a decrease in state participation, passed § 209(b)[2] of *409 the SSI Act which authorized states imposing more restrictive guidelines as of January 1, 1972 to continue using these more restrictive guidelines.[3] Use of § 209(b) was optional; states could retain their more restrictive guidelines or they could adopt the federal SSI guidelines. However, for states adopting 209(b) and retaining more restrictive standards or methodologies, operation of an assistance program for the medically needy was no longer optional, but mandatory. See Morris, 783 F.2d at 456-457, and cases cited therein.
There are thirteen "209(b) states" of which Virginia is one. There are four elements of Virginia's Medicaid eligibility guidelines which are more restrictive than those under SSI:
1. Individuals found presumptively eligible for SSI are not eligible for Medicaid until a final determination is made.
2. Individuals found presumptively disabled for SSI are not Medicaid eligible until a final determination is made.
3. Individuals who are conditionally eligible for SSI are not eligible for Medicaid.
4. Individuals must meet resource and income requirements as calculated using Medicaid methodologies, rather than SSI's methodologies.
Virginia State Plan for Medical Assistance ("Plan"), Attachment 2.2-A, Supplement 2, and Attachment 2.6-A, Supplement 5. Item number four is the root of the present case. Under SSI all property that includes, or is contiguous to, the actual home site is excluded from the resource computation. 42 U.S.C. § 1382b(a)(1). Under the Virginia resource methodology only the claimant's house and the lot on which it stands (or one acre in rural areas), plus no more than $5000 worth of additional property, are excluded. Plan, Attachment 2.6-A, Supplement 5, § 201.1; Va.Code § 32.1-325(A)(3).
The current controversy is a result of various amendments to the basic federal statutory framework. In 1982 Congress enacted an amendment to the Medicaid Act as part of the Tax Equity and Fiscal Responsibility Act (TEFRA). TEFRA required states to include in their state plans covering the medically needy, effective October 1, 1981,
a description of ... (III) the single standard to be employed in determining income and resource eligibility for [the medically needy], and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under the [SSI] program in the case of groups consisting of aged, blind or disabled individuals in a State in which such program is in effect.
42 U.S.C. § 1396a(a)(10)(C)(i)(III).
The Health Care Financing Administration ("HCFA"), the federal agency responsible for administering the Medicaid Act, and the courts, including the Fourth Circuit, subsequently construed this amendment to mean that states could use only the same methodology as that used in SSI. See Morris, 783 F.2d at 459-460. The states could be neither more liberal nor *410 more restrictive. In response to these decisions Congress passed another amendment which imposed a moratorium prohibiting HCFA from imposing monetary penalties on states whose programs deviated from the SSI guidelines. This moratorium was to begin retroactive to October 1, 1981, the effective date of the TEFRA provision. See S.Rep. 109, 100th Cong., 1st Sess. 22-25, reprinted in 1987 U.S.Code Cong. & Admin.News, 682, 702-706. This moratorium provided, in part:
The Secretary ... shall not take any compliance, disallowance, penalty or other regulatory action against a State with respect to the moratorium period ... by reason of such State's plan ... (including any part of the plan operating pursuant to section 1902(f) [the 209(b) option] ...), or the operation thereunder, being determined to be in violation of clause (IV), (V) or (VI) of [42 U.S.C. § 1396a(a)(10)(A)(ii)] or [42 U.S.C. § 1396a(a)(10)(C)(i)(III)] on account of such plan's (or its operation) having a standard or methodology which the Secretary interprets as being less restrictive than the standard or methodology required under such section provided that such plan (or its operation) does not make ineligible any individual who would otherwise be eligible but for the provisions of this subsection.
Pub.L. No. 98-369, § 2373(c)(1), 98 Stat. 494, 1112 (1984) as amended by, Pub.L. No. 100-93, § 9, 101 Stat. 680, 695 (1987).
The final twist in this maze occurred in 1988 when Congress enacted the Medicare Catastrophic Coverage Act ("MCCA"). Section 303(e) of the MCCA amended 42 U.S.C. § 1396a by adding the following new paragraph:
(2)(A) The methodology to be employed in determining income and resource eligibility for individuals under subsection (a)(10)(A)(i)(III), (a)(10)(A)(i)(IV), (a)(10)(A)(ii), (a)(10)(C)(i)(III), or (f) of this section or under 1396d(p) of this title may be less restrictive, and shall be no more restrictive, than the methodology 
(i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under title XVI, or
(ii) in the case of other groups, under the State plan most closely categorically related.
(B) For the purposes of this subsection and subsection (a)(10), methodology is considered to be no more restrictive if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.[4]
Pub.L. No. 100-360, § 303(e), 102 Stat. 683, 763 (1988), as amended by, Pub.L. No. 100-485, § 608(d), 102 Stat. 2343, 2418 (1988).[5] The plaintiffs in this case are all low-income rural residents who own property contiguous to their homes, the value of which renders them ineligible for Medicaid under the state guidelines but who would be eligible were the SSI guidelines used.[6] They contend that § 303(e) eliminated the 209(b) option as it applied to Medicaid income and resource methodologies. The defendants contend that the MCCA had no effect on the states' option to use more restrictive Medicaid eligibility criteria.

*411 III

MCCA § 303(e)

A. Plain meaning.
The resolution of the merits in this case is essentially a matter of statutory interpretation. The court begins this task with the "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Statutory construction properly begins with examination of the literal language of the statute, and it properly ends there unless the language is ambiguous, or would, as literally read, contravene a clearly expressed legislative intention." United States v. Harvey, 814 F.2d 905, 913 (4th Cir.1987) (citations omitted). Happily, all parties agree that the plain meaning of § 303(e) of the MCCA, as amended, is dispositive. Unfortunately, they do not agree on just what that "plain meaning" is.
At first glance, the plaintiffs certainly seem to have the upper hand. As now written, 42 U.S.C. § 1396a(r)(2)(A) states, "The methodology to be employed in determining income and resource eligibility for individuals under subsection ... (f) [the 209(b) option] ... may be less restrictive, and may be no more restrictive, than the methodology" under SSI. Defendants nonetheless offer several reasons why the court should find the plain meaning of the statute to be something other than what it appears to be.
Defendants propose three main arguments on the plain meaning issue. The first is that the "notwithstanding" language of § 209(b) overrides the language in 42 U.S.C. 1396a(r)(2)(A); secondly, that the phrase "otherwise eligible" in § 1396a(r)(2)(B) is restricted to meaning otherwise eligible under the existing state 209(b) plan; thirdly, that plaintiff's reading of the statute leads to absurd results and the plain meaning therefore must be something else. The court will deal with these arguments in order.
Section 209(b) begins: "[n]otwithstanding any other provision of this subchapter," and then sets out a state's right to have more restrictive methodologies or standards for the medically needy. Both defendants argue that this language prevents § 1396a(r)(2)(A) from having any effect on 209(b) states  in essence, § 209(b)'s notwithstanding language "trumps" all other provisions of subchapter XIX. (Federal Defendant's Reply to Plaintiff's Opposition to the Motion to Dismiss at 3, n. 5). Defendants argue that since this language overrides all other provisions, even those subsequently enacted, the court, to rule for the plaintiffs, must work an implicit repeal of § 209(b), an action which is strongly discouraged. See Rodriguez v. United States, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987); McLean v. Central States, Southeast and Southwest Areas Pension Fund, 762 F.2d 1204, 1209 (4th Cir.1985). The notwithstanding phrase cannot be given the effect the defendants seek.
Much of the defendants' arguments in both their original and reply briefs read as if MCCA § 303(e) did not mention § 209(b) at all. If this were indeed the case, their arguments might have more merit, since the court would be somewhat less sure of what Congress intended to do in light of the notwithstanding clause. However, § 303(e) specifically mentions § 209(b), thus rendering much of the defendants' attack well wide of the mark. Cases dealing with the impact of a later statute on an earlier one, where the later statute makes no mention of the former are inapplicable to the current factual situation.
Section 209(b) was enacted in 1972 as an exception to the general Medicaid statute. Section 303(e) of the MCCA was enacted in 1988, modifying various portions of the Medicaid statute, § 209(b) included. As a general rule, where two statutes conflict the later-enacted one takes precedence. Watt v. Alaska, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). There are exceptions to this rule, particularly where the *412 more recent statute makes no reference to the earlier one, but that is not the present case. While the court acknowledges that repeals by implication are disfavored, the court cannot ignore a specific statement in a statute that an earlier statute is to be modified. Section 303(e) states: "The methodology to be employed in determining income and resource eligibility for individuals under subsection ... f [the § 209(b) option] ... may be less restrictive, and may be no more restrictive" than that under SSI. To the extent that this specific instruction conflicts with the earlier "notwithstanding" language, the earlier statute must yield. Watt, 451 U.S. at 262, 101 S.Ct. at 1676. Where the directive to modify is so plainly stated a court need not look elsewhere. Congress obviously has the power to amend prior enactments; this court has no power to bind Congress's hands by requiring any particular phraseology so long as that used is sufficiently clear.
To make an immutable talisman out of "notwithstanding" serves only needlessly to frustrate congressional intent. Following the defendants' logic, by using the word "notwithstanding," Congress creates a beast over which it has no control; once that language is enacted, Congress can do only one of two things: stand back while the language subsumes all later enacted statutory changes, or repeal the language. Such a construction is unnecessary and unwise.
Section 303(e) does not repeal § 209(b), but it amends it; other elements of the original § 209(b) survive.[7] Congress intended those portions which remain to apply notwithstanding other provisions of title XIX, just as they had previously. In such a situation, where Congress intends to leave part of the preexisting statutory scheme in place, while restricting other aspects, the method used in § 303(e) is an appropriate one. Congress may achieve this result in any number of ways, but a court in interpreting a statute may not substitute its semantic preferences for those of Congress. Where the meaning is plain, this court is bound to go no further. Harvey, 814 F.2d at 913.
The notwithstanding phrase was intended to eliminate unforeseen conflicts between § 209(b) and the massive and unwieldy Medicaid statute at the time § 209(b) was enacted.[8] It was not intended to prevent forever Congress from enacting subsequent restrictions or modifications of that section, particularly where Congressional intent to do so is made manifestly clear. In conclusion, the court finds, as a matter of law, that the notwithstanding language in § 209(b) remains in effect, but only as to those provisions of title XIX which have not been removed from its coverage by specific, subsequent legislative enactments. The court further finds, as a matter of law, that MCCA § 303(e) specifically removes the methodologies to be used in computing Medicaid eligibility for the medically needy from inclusion under the notwithstanding language.[9] This reading gives effect to both § 209(b) and § 303(e) *413 "while preserving their sense and purpose." Watt, 451 U.S. at 267, 101 S.Ct. at 1678.
Under the second line of attack, while arguing that the plain meaning of the statutory language controls, the state defendant also contends that the term "no more restrictive" was intended by Congress to be read "more narrowly than that term would otherwise be construed." The logical inconsistency between this and the Commonwealth's "plain meaning" argument aside, Congress clearly did not intend a restrictive definition of this term.
42 U.S.C. 1396a(r) defines a methodology as being "no more restrictive" if additional individuals may be eligible and "no individuals who are otherwise eligible are made ineligible for such assistance." The state defendant argues that by "otherwise eligible" Congress meant otherwise eligible under the more restrictive state 209(b) plan. The state defendant provides no statutory or historical support for this argument, but essentially argues backward from his conclusion  since Congress must have meant to leave the 209(b) option open, this passage must mean otherwise eligible under the 209(b) plan.
It is clear that by "otherwise eligible" Congress meant otherwise eligible under the SSI guidelines. 42 U.S.C. 1396a(r)(2)(A)(i) specifically incorporates SSI as the basis for comparison. When the MCCA was reported out of the House Energy and Commerce Committee the accompanying committee report stated
To avoid any possible ambiguity, the bill provides that a methodology is considered to be "no more restrictive" if using the methodology, individuals qualify for Medicaid even though they would not be eligible were the SSI methodology used, and individuals who would be eligible for Medicaid under the SSI methodology would not be ineligible under the State's medically needy methodology.
H.R.Rep. No. 100-105(II), 100th Cong., 2nd Sess., 75, reprinted in, 1988 U.S.Code Cong. & Admin.News, 803, 898 (emphasis added). By "otherwise eligible" Congress meant otherwise eligible under SSI. The language of the statute is clear. Congressional intent is clear. The court's analysis must end at this point. Harvey, 814 F.2d at 913. The court will not turn the plain meaning rule on its head by accepting the state defendant's invitation to give the the statutory language a "more narrow" meaning than it plainly has.
Both defendants argue that reading 42 U.S.C. § 1396a(r)(2) to eliminate the state's 209(b) option renders other sections of the MCCA superfluous or leads to absurd results, and thus violates one of the cardinal rules of statutory interpretation. Initially, if it were true that § 1396a(r)(2) eliminated the 209(b) option entirely there might be some merit to defendants' argument. However, as pointed out earlier, § 1396a(r)(2) did not eliminate § 209(b); it restricted it. Viewed in this light, the statutory sections cited by the defendants fall into orderly place.
Defendants first cite § 303(f), which requires the state of Missouri to exclude from its definition of "resources" an individual's home. This would be superfluous, they argue, had 209(b) been repealed in its entirety. Section 303(f) does nothing more than extend the date by which Missouri must be in compliance with the statute beyond that generally applicable to other states. The court's own experience as a legislator suggests a multitude of reasons why such specialized language may have been enacted, particularly since it was Senator Danforth of Missouri who proposed the amendment; suffice it to say that legislation extending a compliance deadline is consonant with plaintiffs' reading of the statute.
Another provision cited by the defendants is MCCA § 411(k)(10)(G)(iv) which amended § 209(b) internally. Again, defendants are tripped by their belief that plaintiffs' reading repeals the entire 209(b) option. They argue that if 209(b) has been eliminated, legislation amending it is meaningless. Section 411(k)(10)(G)(iv) modifies the manner in which income is calculated in a Medicaid spenddown. This legislation is perfectly in line with the plaintiffs' interpretation. 42 U.S.C. 1396a(r)(2) restricts *414 only the Medicaid eligibility floor; it has no effect on the previously existing spenddown regulations. Since those remain in effect, the presence of § 411 does not result in any superfluity or ambiguousness.
The other sections cited by the defendants also fail to create a conflict with the plain meaning of § 303(e). Sections 303(a) and (b) both deal with other matters left untouched by 303(e)'s modification of the eligibility floor. Defendants again argue that if 209(b) were eliminated entirely these would be meaningless. Again, these sections relate to prior legislation that was unaffected by the changes imposed in 303(e). In summary, defendants argue that the court should not give the statute what they essentially concede is its plain meaning because to do so would create unnecessary ambiguity. This argument is, in turn, based upon the assumption that the plain meaning of § 303(e) results in the repeal of ¶ 209(b). This is inaccurate. All that the sections cited by the defendants do is show that Congress was addressing a multitude of issues, and that it did so in a variety of ways. All of the sections are harmonious with each other  §§ 303(a), (b), (e) and (f) all address different issues. None of these provisions eliminate § 209(b); they only modify it. They are all consistent with 42 U.S.C. § 1396a(r)(2)'s requirement that states be no less restrictive than SSI when formulating their Medicaid income and resource methodologies.[10]

B. Congressional intent.
Since the plain language of the statute is clear, an investigation into legislative history and Congressional intent is unnecessary. Harvey, 814 F.2d at 913. However, a review of that intent supports the interpretation of the amendment put forward by the plaintiff.
Stepping back from close scrutiny of the language, a general flaw in the defendants' argument becomes apparent. The thrust of the defendants' contentions is that the MCCA was meant to culminate a series of amendments to the Medicaid statute which were intended to make clear Congress's intent to allow states to be more generous than the SSI guidelines if they chose to do so. This was necessary, they argue, because HFCA and the courts had restricted states to using only methodologies that were identical to those in SSI. They argue that Congress intended only to codify the "flexibility" to be more generous, and nothing else. The error in the defendants' argument is that it renders the "no more restrictive" language, which Congress carefully defined in the statute, pointless. None of the non-209(b) states, and certainly none of the states that wanted to be more generous, were going to be more restrictive. Why would Congress include the "no more restrictive" language if all it meant to do was allow states to be more liberal?[11] If Congress meant to do no more than codify a state's right to be more liberal it would have eliminated the final clause of (2)(A) and entirely done away with (2)(B). To deny the "no more restrictive" language its clear effect not only runs counter to the statute's plain meaning, but to logic as well.
As noted above, the report of the House Committee makes it clear that SSI is to be the base against which income resource and methodologies are to be compared. *415 That it was meant to apply to 209(b) states is also made amply clear. The conference committee report states that "[section 303(e)(5)] follows the House bill ... with a modification extending its application ... to 209(b) States as well." H.Conf.Rep. No. 661, 100th Cong., 2nd Sess., 268, reprinted in 1988 U.S.Code Cong. & Admin. News 1046.
The defendants make much of a Congressional intent to allow states to be more generous; they implicitly assume that this was Congress's only intent and that this is inconsistent with the plaintiffs' reading. On the contrary, the two go hand in hand. As the House committee said
In the view of the Committee, there is no justification for the rigid application of SSI eligibility rules to Medicaid medically needy programs. Prior to [HFCA's holding that the states must exactly follow those guidelines] States had the flexibility to establish income or resource methodologies less restrictive  i.e. more generous from the applicant's standpoint  than those under SSI. States should continue to have this flexibility. On the other hand, the Committee does not believe that the states should have the discretion to apply methodologies under their medically needy programs that are more restrictive  i.e. less generous from the applicant's standpoint  than those under SSI.
H.R.Rep. No. 100-105(II), 100th Cong., 2nd Sess. 75, reprinted in, 1988 U.S.Code Cong. & Admin. News 898 (emphasis added). The two intentions are brought clearly together in this passage. Congress did intend to codify the states' right to be more generous, and the corollary of this was the codification of the states' responsibility to be no less generous than SSI. Defendants' repeated citation to parts of the history which evince an intent to allow the states to be more generous only supports the plaintiffs' position: an intent to allow the states to be more generous does not conflict with, but supports, a concurrent intent not to allow the states to be less generous. In conclusion, the court finds that Congressional intent firmly supports the plain language of the statute which requires states to establish Medicaid resource and income methodologies which are no more restrictive than those under SSI.

C. Administrative interpretation.
The federal defendant argues that, all other matters aside, his interpretation of the statute is entitled to judicial deference. He acknowledges that the sections of the act involved in the present case are not ones which involve a delegation of authority to him by Congress, and thus his interpretation is not to be accorded legislative effect, see Schweiker, 453 U.S. at 43-44, 101 S.Ct. at 2639-40; however, he argues that his interpretation is still entitled to great deference.
The court does not discount the Secretary's insight into this matter; it was a major reason for having him joined as a party. Nonetheless, "the judiciary is the final authority on issues of statutory construction," Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984), and the court must follow clear legislative intent, not to mention the plain language of the statute, when it conflicts with administrative interpretation. Id.; INS v. Cardoza-Fonseca, 480 U.S. 421, 447-448, 107 S.Ct. 1207, 1221-22, 94 L.Ed.2d 434 (1987); Darling v. Bowen, 685 F.Supp. 1125, 1131 (W.D.Mo.1988).

IV

QMB Benefits
Plaintiffs bring a second claim, alleging that DMAS is in violation of federal law in its operation of the program for qualified Medicare beneficiaries ("QMB"). This claim is similar to the one concerning guidelines for Medicaid in that it is based on an argument that Congress removed the states' ability to use methodologies more restrictive than those under SSI for determining eligibility in the QMB program.
The QMB category was created as an optional program by the OBRA amendments of 1986. It is now codified at 42 U.S.C. §§ 1396a(a)(10)(E), 1396d(p) and elsewhere. The QMB program provides that *416 state Medicaid programs will pay Medicare premiums, deductibles and co-insurance amounts for certain elderly persons. Initially the QMB program was optional to the states. As originally enacted, 42 U.S.C. § 1396d(p)(1)(C) provided that persons would be eligible for QMB benefits whose income did not exceed the SSI income cutoff and
whose resources (as determined under section 1382b of this title for purposes of [SSI]) do not exceed (except as provided in paragraph (2)(B)) the maximum amount of resources that an individual may have and obtain benefits under the program.
Section 1382b, referred to in § 1396d(p)(1)(C), sets out the resource methodologies for SSI; the result is that § 1396d(p)(1)(C) authorizes eligibility in the QMB program for persons whose resources computed under SSI methodologies do not exceed the maximum standard for SSI eligibility.
MCCA § 301 amended 1396d(p) in two ways: it doubled the resource standard by substituting the word "twice" where (p)(1)(C) previously read "(except as provided in paragraph (2)(B))" (MCCA § 301(c)), and it made participation in the QMB program mandatory (MCCA § 301(a)).[12] Plaintiffs maintain that these changes are binding on Virginia. The defendants argue that § 209(b) exempts the state from compliance with the requirement of 42 U.S.C. § 1396d(p)(1)(C) that SSI standards and methodologies be used. This position, too, is clearly contradicted by the statute.
There are two components of the QMB eligibility equation that are important here: income and resources. Congress's different treatment of these two components indicates that it intended the latter to apply to 209(b) states, and to do so immediately. In enacting the MCCA Congress specifically provided an extended period for 209(b) states to come into compliance with the requirement that income standards be the same as those in SSI. 42 U.S.C. 1396d(p)(2)(C). Congress made no such provision for the resource standard. This distinction is a clear indication that Congress intended no 209(b) exception to apply to the resource standards under the QMB program. The only other federal court to face this issue has reached the identical conclusion. See Coleman v. Barry, C-1-89-0177, slip op. at 4, 1989 WL 97946 (S.D. OH., June 12, 1989) ("As Congress provided for a 209(b) exception for income eligibility in the immediately preceding section of [the MCCA], it seems clear that Congress' silence means that there was to be no 209(b) exception for the resource standard.") Section 1396d(p)(1) requires all states to use SSI income and resource standards.
Income and resource methodologies to be used in determining QMB eligibility, like those to determine eligibility for Medicaid in general, are also to be no less restrictive than those under SSI. 42 U.S.C. § 1396d(p)(1)(B) and (C) both refer to the methodologies used in SSI as the ones to be used in the QMB program (42 U.S.C. §§ 1382a and 1382b respectively). While § 303(e) of the MCCA did not mention QMB beneficiaries, 42 U.S.C. § 1396a(r)(2)(A) was subsequently modified by Pub.L. 100-485, § 608(d) to specifically include QMB beneficiaries within its scope. Thus, 42 U.S.C. § 1396a(r)(2)(A) now reads, in part, "The methodology to be employed in determining income and resource eligibility for individuals under ... 1396d(p) [the QMB program] ... may be less restrictive, and shall be no more restrictive, than the methodology" under SSI. The court's earlier reasoning and conclusion as to the effect of MCCA § 303(e) on § 209(b) are equally applicable to Pub.L. 100-485, § 608(d) and § 209(b).
Defendants raise essentially the same arguments to counter § 301 and Pub.L. 100-485, § 608(d) that they used to counter § 303. The federal defendant, particularly, raises his "notwithstanding" argument *417 again. That contention is equally unavailing here. The QMB program is an entirely new eligibility program enacted subsequent to the 209(b) option. Congress's careful effort to distinguish different treatment for 209(b) states in the income standard situation indicates its awareness of the 209(b) option and its intent to place the QMB program resource guidelines outside of the reach of its "notwithstanding" language.
In summary, the court finds that 42 U.S.C. § 1396d(p)(1), as amended, requires the Commonwealth to use standards for the QMB program which, as to income, are the same as the SSI income standard (subject to the phase in requirements of 42 U.S.C. § 1396d(p)(2)(C)), and which, as to resources, are twice the SSI standard. The court also finds that the income and resource methodologies to be used by the Commonwealth in determining QMB eligibility may be less restrictive, but shall be no more restrictive, than those under SSI.

V

Administrative Appeals
Plaintiffs' final claim is that the Virginia Medicaid Eligibility Appeals Board's ("VMEAB") (an entity within DMAS) policy of refusing to hear arguments as to issues of federal law in the course of administrative appeals violates both their Due Process rights under the Fourteenth Amendment and their rights under the Medicaid statute.
42 U.S.C. 1396a(a)(3) requires a state to grant
an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the [state] plan is denied or not acted upon with reasonable promptness.
Plaintiffs argue that a "fair hearing" includes the right to present argument as to whether state policies or procedures are in compliance with federal law. The state defendant has two responses. The first is that federal law and regulations do not require DMAS to entertain argument on issues of federal law. The second is that, regardless of the regulations, the Board would be violating established rules of administrative law if it was forced to modify properly formulated and adopted administrative rules in individual cases.
42 C.F.R. § 431.242(d) accords an appellant the right to "present an argument without undue interference." Neither this section, nor any other, places any restrictions on the content of the argument. The defendant argues that 42 C.F.R. § 431.220 allows the state to refuse a hearing if the sole basis of the appeal is a challenge to federal or state law. This interpretation misconstrues, if not entirely ignores, the full language of § 431.220(b) which states, "[t]he agency need not grant a hearing if the sole issue of appeal is a Federal or State law requiring an automatic change adversely affecting some or all recipients." (Emphasis added.) The present case is clearly not of the type excluded by § 431.220(b). And, by implication, the regulation allows hearings in cases such as the present where the sole issue is one of federal law which an appellant argues would increase benefits.
Other regulations also indicate that appeals are allowed where the only issue is federal law. 42 C.F.R. § 431.222(b) provides that where the only issue is one of federal or state law, group hearings may be held. 42 C.F.R. § 431.230(a)(1) allows the discontinuance of services to an individual whose appeal concerns only an issue of state or federal law, and § 431.231(b) provides that reinstated services may be discontinued before a hearing if the only issue is one of federal or state law. These citations clearly indicate that appeals before the VMEAB which raise only issues of federal or state law are permissible under the Medicaid statute.
42 C.F.R. § 431.220 states
(a) The agency must grant an opportunity for a hearing to:
(1) Any applicant who requests it because his claim was denied ...
(2) Any recipient who requests it because he believes the Agency has taken an action erroneously.
*418 (Emphasis added.) Section 431.220 makes the granting of a hearing mandatory at the request of an applicant or recipient aggrieved by an agency's decision. It does not limit that obligation only to those cases where the appellant raises a factual or evidentiary issue. The combination of the regulations demonstrating that appeals raising only issues of federal law are contemplated, and the mandatory nature of the language in § 431.220 regarding the granting of hearings, leads the court to find that VMEAB's refusal to allow argument as to federal law violated the plaintiffs' rights under the Medicaid statute, 42 U.S.C. 1396a(a)(3), and the regulations thereunder.
While it is not necessary to the court's decision in this case, VMEAB's refusal to consider issues of federal law also violates the plaintiffs' Due Process rights. One of the rights generally agreed to be included in the general term "Due Process" is the right to a "fair hearing." A hearing from which a discussion of federal law is excluded, particularly where the thrust of the argument is that the state action is illegal under that law, is certainly not a "fair" one.
The state defendant argues that hearing officers are not allowed to depart from validly enacted legislative rules of the agency in individual adjudications, and thus the court's holding would require them to violate a settled rule of administrative law. The defendant acknowledges that where a state policy violates a federal policy, the hearing officer must apply the federal policy. Where a state regulation violates a federal law, that duty is even stronger. The agency may not ignore clear federal law merely because it has a different rule. Nor may the agency prevent the inconsistency from being made apparent by foreclosing argument on the issue.
It is true that administrative process, plus judicial review, may equal Due Process. Thus it is possible that a system could be set up such that an agency could prevent argument on federal law and require the appellant to pursue review in federal or state court on the issue of the legality of the state rule. While possible, it is certainly not the most efficient allocation of resources. Allowing appellants to raise the issue before the state agency gives the state the first crack at considering the issue and perhaps bringing state regulations into compliance. A hearing officer is not bound to accept the appellant's argument; however, making the agency aware of a potential conflict may well prevent the expense of litigation and encourage thoughtful, internal review.
In conclusion, the court finds as follows: as a matter of law, Virginia's Medicaid eligibility regulations, insofar as they have income and resource methodologies which are more restrictive than those under the Supplemental Security Income Program, violate the requirements of 42 U.S.C. 1396a(r)(2) and may not be applied. As a matter of law, Virginia's qualified Medicaid beneficiary guidelines, to the extent that they use income or resource methodologies more restrictive than those under SSI, violate 42 U.S.C. 1396d(p) and may not be applied. The Commonwealth must establish Medicaid and QMB eligibility guidelines that are in accord with the federal statutes as interpreted by this and other courts. The Virginia Medicaid Eligibility Appeals Board's policy of preventing appellants from raising issues of federal law during administrative appeals is in violation of 42 U.S.C. § 1396a(a)(3). The Board shall forthwith allow appellants to present argument on issues of state or federal law without undue interference.

VI

Class Action
Plaintiffs have moved to have this case maintained as a class action and to have one class and one sub-class certified. While the state defendant originally opposed the declaration of a class action, he has subsequently agreed that a class action is appropriate, though he disputes what the parameters of the class should be.
Under certain circumstances Rule 23, Fed.R.Civ.P., authorizes the maintenance of a class action. Four prerequisites must be met: "(1) numerosity of the parties; (2) *419 commonality of legal and factual issues; (3) typicality of the claims and defenses of the class representative; and (4) adequacy of representation." In re A. H. Robbins Co., 880 F.2d 709, 727 (4th Cir.1989). See also Rule 23(a), Fed.R.Civ.P. Once this initial step has been passed the court must then determine whether the case fits within any of the categories prescribed by Rule 23(b). Id. at 727-28. While the court may fashion separate classes in the same case, or establish a class as to only one of the issues, each class or subclass must qualify under Rule 23. Id. at 728; Fed.R.Civ.P. 23(c)(4).
The four conditions in Rule 23(a) are met by each class in this case. By the Commonwealth's own estimates, approximately 9,000 people would be eligible under § 303(e) who are not currently eligible. The issues raised in this case are purely legal ones, and, coming from the same statute, are identical as to all the claimants in each subclass; thus, the commonality requirement is met. The core of the requirement of typicality is essentially that the named plaintiffs' claims not be antagonistic to the claims of other members of the class. See, Rosado v. Wyman, 322 F.Supp. 1173, 1193 (E.D.N.Y.1970), aff'd, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). As all class members trace their claims to the same statute, the requirement of typicality is met. Additionally, the representatives all have a personal stake of substantial importance in the outcome of this case; the provision of needed medical care. The court has been favorably impressed with the quality of the memoranda in this case. These plaintiffs will adequately protect the interests of the class. The four requirements of Rule 23(a) are met. This action falls squarely within the wording of 23(b)(2) since "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The court therefore finds that this case may be properly maintained as a class action and will certify two classes, as defined below.
The parties dispute the proper definition of the class. Plaintiffs have proposed the following definitions:
All aged, blind or disabled persons in Virginia who since July 1, 1988, would qualify for Medicaid assistance but for the defendants' use of an income or resource methodology that is more restrictive than the income and resource methodologies used under the SSI program
and a subclass to cover the QMB beneficiaries:
All Medicare beneficiaries in Virginia who since January 1, 1989, would qualify for Medicaid assistance but for the defendants' use of an income or resource methodology that is more restrictive than the income and resource methodologies used under SSI.
The defendant wishes the class defined to include only those persons who have actually been denied benefits under the state 209(b) methodologies since the effective dates of the statutes, and not those who were eligible but never applied. The plaintiffs' class is inappropriate, defendant argues, because there has been no "state action," as required in a § 1983 action, against those who never applied, and because it is a thinly veiled attempt to use the notice provisions of the class action to further the plaintiffs' "social outreach program."
While exhaustion of state remedies is not required before bringing a § 1983 action, Patsy v. Board of Regents of Florida, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982), the court is not as convinced as the plaintiffs are that not even the filing of an application is required. Nonetheless, the common issue between the representatives and the other class members is not whether a § 1983 action is maintainable, but whether the state Medicaid policies violate federal law. This issue exists whether a class member has applied for any benefits or not.
The state defendant argues that the plaintiffs' definition is too broad; this is based on the assumption that everyone who desires these benefits has applied for them and therefore people who have not *420 applied have not been harmed by his action. Plaintiffs offer several compelling reasons why this assumption is inaccurate and their definition is more appropriate. The first example are persons who applied for benefits before July 1988 (or January 1989 in the case of QMB benefits) and were rejected. Under the defendant's class definition these applicants are excluded. These are persons who desired benefits and applied for them; having been once rejected there is no reason to expect them to have reapplied. The more narrow class definition proposed by the state defendant would exclude these persons even though they fall outside the defendants' model of people who have chosen to eschew public benefits.
The other hypotheticals proposed by the plaintiffs also undercut the state defendant's model of the "benefit avoider." There are some, plaintiffs argue, who may have contacted the defendant or other aid administrators to begin the application process only to be dissuaded by being told that their resources place them outside the eligibility guidelines. Upon hearing this they did not complete the application process. Others, given the longstanding nature of the state's restrictive guidelines, may not even have bothered to commence an application after being informed that they would most likely not be found eligible.
Admittedly these are only hypotheticals, but they demonstrate that the state defendant's argument may not fully account for a person's failure to have applied for benefits. Given this uncertainty, the court will adopt the broader class definitions of the plaintiffs. If, after notification, some eligible individuals still wish not to apply for available benefits they will be free to do so.
As to the state defendant's remaining argument against the broader class, suffice it to say that the Federal Rules are silent as to the propriety of a particular definition furthering or hindering a party's social or political agenda.

VII

Relief
In summary, the court denies the motions of both defendants for summary judgment, and grants plaintiffs' motion for summary judgment. This action shall be maintained as a class action. The court finds that Virginia's use of Medicaid income and resource methodologies that are more restrictive than the income and resource methodologies under SSI violates 42 U.S.C. § 1396a(r)(2). The court finds that Virginia's use of income and resource methodologies in determining eligibility for QMB benefits that are more restrictive than those under SSI violates 42 U.S.C. § 1396d(p). The court finds that the Virginia Medicaid Eligibility Appeals Board's refusal to allow argument by appellees which concerns issues of federal law violates 42 U.S.C. § 1396a(a)(3).
The temporary restraining order issued in this case on February 10, 1989 will be dissolved. A permanent injunction will enter prohibiting the defendants from the following:
(1) Using income or resource methodologies to determine medicaid eligibility which are more restrictive than those under SSI.
(2) Using income or resource methodologies to determine eligibility for QMB benefits which are more restrictive than those used under SSI.
(3) Using resource standards to determine eligibility for QMB benefits which are more restrictive than twice those under SSI.
(4) Unduly interfering with an appellant's right to present arguments on appeal before the VMEAB which raise issues of federal law.
Further proceedings will be held to determine the plaintiffs' entitlement to attorney's fees as the prevailing parties under 42 U.S.C. § 1988 and to resolve the mechanics of notification of class members.
An appropriate Order shall this day issue.

ORDER
For the reasons stated in the accompanying Memorandum Opinion, it is this day

*421 ADJUDGED AND ORDERED
that:
1. Defendants' motions to dismiss, shall be, and they hereby are, denied.
2. Defendants' motions for summary judgment, shall be, and they hereby are, denied.
3. Plaintiffs' motion for summary judgment, shall be, and it hereby is, granted.
4. The temporary restraining order issued in this case on February 10, 1989, shall be, and it hereby is, dissolved.
5. As of the date of this Order, a permanent injunction is entered prohibiting the state defendant from the following:
(1) Using income or resource methodologies to determine medicaid eligibility which are more restrictive than the income and resource methodologies under SSI.
(2) Using income or resource methodologies to determine eligibility for QMB benefits which are more restrictive than the income and resource methodologies used under SSI.
(3) Using resource standards to determine eligibility for QMB benefits which are more restrictive than twice the resource standard under SSI.
(4) Unduly interfering with an appellant's right to present arguments on appeal before the VMEAB which raise issues of federal law.
6. This action shall be maintained as a class action pursuant to Rule 23(b)(2), Fed. R.Civ.P.
7. A class and a sub-class shall be, and they hereby are, certified as follows:
A class consisting of
All aged, blind or disabled persons in Virginia who since July 1, 1988, would qualify for Medicaid assistance but for the defendants' use of an income or resource methodology that is more restrictive than the income and resource methodologies used under the SSI program
A sub-class consisting of
All Medicare beneficiaries in Virginia who since January 1, 1989, would qualify for Medicaid assistance but for the defendants' use of an income or resource methodology that is more restrictive than the income and resource methodologies used under SSI.
7. Further proceedings will be held to determine the plaintiffs' entitlement to attorney's fees as prevailing parties under 42 U.S.C. § 1988, and to resolve the mechanics of notification of class members.
NOTES
[1] These programs originally were: Old Age Assistance, 42 U.S.C. § 301, et seq.; Aid to Families with Dependent Children, 42 U.S.C. § 601, et seq.; Aid to the Blind, 42 U.S.C. § 1201, et seq.; and Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1351, et seq. Three of these programs have since been consolidated under SSI, see p. 408, infra.
[2] Part of the confusion in this case arises from the fact that every statutory section has three different numbers that it is known by: the section number under which it appeared in the public law in which it was enacted, its section number under the SSA, and its section number in the United States Code. To the extent possible, the court will try to use only one number when referring to the same statutory language. In this case, this language originally appeared in § 209(b) of Public Law no. 92-603 and it is the appellation by which that language is most commonly known. It is also § 1902(f) of the SSA, and 42 U.S.C. § 1396a(f).
[3] Section 209(b) reads, in part, as follows:

Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section, no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with § 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972.
[4] In an effort to make this crucial language more readily decipherable, the first paragraph of § 303(e) is repeated below with descriptive phrases taking the place of statutory citations:

The methodology to be employed in determining income and resource eligibility for [pregnant women and children with resources and income at AFDC limits], [pregnant women and children with income below poverty level], [optional categorically needy including nursing home recipients], [medically needy], or [elderly, blind, and disabled in 209(b) states], or [qualified Medicare beneficiaries] may be less restrictive, and shall be no more restrictive, than the methodology [used in SSI.]
The highlighted language was added by Pub.L. 100-485, § 608(d) subsequent to the enactment of § 303(e).
[5] Codified as 42 U.S.C. § 1396a(r)(2).
[6] It should not be thought, however, that any of these plaintiffs own vast land holdings. Of the plaintiffs currently before the court the one with the largest amount of excess assets owns land which exceeds the cutoff by only $14,673.
[7] For example, in the specialized world of public entitlement programs "standards" and "methodologies" are distinctly different entities. See Morris, 783 F.2d at 462; Camacho v. Perales, 786 F.2d 32, 35 (2d Cir.1986). The states' right to use more restrictive standards, as long as they were in place in 1972, apparently remains unaffected by any subsequent amendments.
[8] See Matter of Oswego Barge Corp., 664 F.2d 327, 340 (2nd Cir.1981), where the court, construing a clause in the Federal Water Pollution Control Act which read "notwithstanding any other provision of law" (a clause even broader than that in § 209(b)) stated, "we think it means that the remedies established by [the law] are not to be modified by any preexisting law." (Emphasis added.)
[9] The defendants' argument on this point is somewhat disingenous. Both of them point to other sanctions of the MCCA which refer to and modify the 209(b) option, such as MCCA § 303(b), as evidence that the plaintiffs' reading of the statute is erroneous. See, p. 413, infra. However, they offer no explanation of why these other amendments are not also trumped by 209(b)'s notwithstanding language. Defendants cannot argue that sometimes a reference to 209(b) is specific enough to override the "notwithstanding" language while other times it is not, solely upon the basis of whether the result of the amendment is or is not favorable to them.
[10] The clarity of the statute is reinforced by numerous documents produced during discovery which show that at the time of enactment the Commonwealth had reached the same conclusion about the meaning of the statute that the plaintiffs have. Typical is a letter from Ray Sorrell, the state defendant's predecessor in office, to the Director of the State Department of Planning and Budget, dated August 11, 1988 which reads, in part:

One provision of [the MCCA] which has an immediate deleterious effect is the elimination effective July 1, 1988 of Virginia's 209(b) status. Although we are continuing our efforts to get restorative language included in the Welfare Reform Bill, the outlook for success is not good.
[11] Defendants contend that Congress meant to clarify that programs which on the whole were more generous, but in particular situations were in fact more restrictive, were prohibited. They point to no particular language in support of this. Given the particularity with which the "no more restrictive" language is defined, its prominence in the amendment, and the general background of the Act, this reading seems unduly narrow.
[12] There was some confusion as to the statutory lettering scheme used in § 301. The MCCA amended 42 U.S.C. § 1396d(p)(1)(D), however, a previous statute had eliminated (B) and relettered (C) as (B) and (D) as (C). There is no dispute that the changes in MCCA § 301 were intended to apply to § 1396d(p)(1)(C).