783 F.2d 454
 12 Soc.Sec.Rep.Ser. 259, Medicare&Medicaid Gu 35,133
Mamie B. MORRIS, by her guardian ad litem, Rosa M. SIMPSON;
Lucy R. Dellinger, by her guardian ad litem, Arah L.
Rozzelle (6-21-84); Pearl S. Cordell, by her guardian ad
litem, Bill D. Cordell (6-21-84), Appellees,
v.
Sarah MORROW, individually & in her official capacity as
Secretary of the North Carolina Department of Human
Resources; Barbara D. Matula, individually & in her
official capacity as Director of the Division of Medical
Assistance of the N.C. Department of Human Resources, Appellants,
and
Margaret Heckler, Sec. of H & H; Richard L. Morris,
Associate Regional Adm., H & H; James J. Pirkle,
Acting Regional Adm., H & H Services,
Defendants.
Secretary of Health and Human Services, Amicus Curiae.
Mamie B. MORRIS, by her guardian ad litem, Rosa M. SIMPSON;
Lucy R. Dellinger, by her guardian ad litem, Arah L.
Rozzelle (6-21-84); Pearl S. Cordell, by her guardian ad
litem, Bill D. Cordell (6-21-84), Appellees,
v.
Sarah MORROW, individually & in her official capacity as
Secretary of the North Carolina Department of Human
Resources; Barbara D. Matula, individually & in her
official capacity as Director of the Division of Medical
Assistance of the N.C. Department of Human Resources, Appellants,
and
Margaret Heckler, Sec. of H & H; Richard L. Morris,
Associate Regional Adm., H & H; James J. Pirkle,
Acting Regional Adm., H & H Services,
Defendants.
Secretary of Health and Human Services, Amicus Curiae.
 Nos. 85-1098(L), 85-1358.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1985.
Decided Feb. 11, 1986.
Rehearing and Rehearing In Banc Denied in No. 85-1098 Feb. 28, 1986.
 
 1
 Steven Mansfield Shaber, Asst. Atty. Gen., and Cathy J. Rosenthal, Associate Atty. Gen., Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellants.
 
 
 2
 Charles E. Johnson, Moore, Van Allen, Allen & Thigpen, and Pam Silberman, Charlotte, N.C. (N.C. Legal Services Resource Center, Inc., on brief), for appellees.
 
 
 3
 Richard K. Willard, Washington, D.C., Charles R. Brewer, U.S. Atty., Asheville, N.C., David R. Smith, on brief, for amici curiae.
 
 
 4
 Before RUSSELL and SNEEDEN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 TERRENCE WILLIAM BOYLE, District Judge:
 
 5
 This is an appeal from a judgment by the United States District Court for the Western District of North Carolina in a class action brought by Medicaid recipients against the Secretary of the North Carolina Department of Human Resources and the Director of the Division of Medical Assistance of the North Carolina Department of Human Resources challenging the use in the state's Medicaid program of the so-called "$6,000/6% rule" for determining which income producing property should be exempt in the calculation of the recipient's or applicant's reserve of property.
 
 
 6
 The district court held: the defendants had violated 42 U.S.C. Sec. 1396a(f), Sec. 209(b) of PUB.L. 92-603, (hereinafter Sec. 209(b) ), through their application of the "$6,000/6% rule"; enjoined them from applying the "$6,000/6% rule"; and, ordered the defendants to notify all class members of their rights under the court's decision. Subsequently, the district court awarded attorneys fees to the plaintiffs' counsel pursuant to 42 U.S.C. Sec. 1988.
 
 
 7
 We hold that the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III), mandates that North Carolina use the "$6,000/6% rule" because it is a part of a methodology for determining Supplemental Security Income Eligibility. We therefore reverse the district court's order.
 
 I.
 Statutory Background
 
 8
 The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396, et seq., "provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." Schweiker v. Gray Panthers, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981) quoting Harris v. McCrae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). States choosing to participate in the program are required to follow federal guidelines, 42 U.S.C. Sec. 1396, "and must comply with the requirements imposed by the Act itself and the Secretary of Health and Human Services." Schweiker v. Gray Panthers, supra, 453 U.S., at 36-37, 101 S.Ct., at 2636.
 
 
 9
 Two types of recipients have traditionally received Medicaid Assistance. The first group, commonly called the "categorically needy", received general welfare payments under one of four federal programs. The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age or disability.[1] The Medicaid laws required all participating states to provide benefits to the categorically needy. See Randall v. Lukhard, 709 F.2d 257 (4th Cir.1983) mod. and aff'd en banc, 729 F.2d 966 (4th Cir.1984).
 
 
 10
 In addition, a state could provide benefits to the "medically needy". These are people whose income is too high to qualify for one of the categorical programs but meet all the other categorical criteria. Schweiker v. Hogan, 457 U.S. 569, 573, 102 S.Ct. 2597, 2601, 73 L.Ed.2d 227 (1982). These relatively more affluent aged, blind or disabled persons could become eligible for Medicaid only if their income and assets were insufficient to meet the cost of necessary medical or remedial health care and services. Id. Providing relief for the medically needy was optional even for states electing to participate in the general Medicaid program. However, having elected to supply benefits to both groups, a state had to use the same eligibility standards for each. Winter v. Miller, 676 F.2d 276, 277 (7th Cir.1982). North Carolina has opted to provide coverage to the medically needy. N.C.Gen.Stat. Sec. 108-51 (1978 & Supp.1985).
 
 
 11
 In 1972 Congress created the Supplemental Security Income Program (SSI) to take effect January 1, 1974. 42 U.S.C. & 1381, et seq. This legislation was aimed at federalizing the three general welfare programs for the aged, blind and disabled, but not for the program which provided aid to families with dependent children. However, the new SSI eligibility criteria were broader than some of the prior state established criteria. Schweiker v. Hogan, supra, 457 U.S., at 581-82, 102 S.Ct. at 2605-06. Thus, in some states, SSI threatened to swell the Medicaid roles and place a large financial burden on those states. Congress, fearing an exodus of participating states, in 1974, added Sec. 209(b) to the Supplemental Security Income Act, 42 U.S.C. Sec. 1396a(f) to encourage continued participation by states with stricter criteria.[2]
 
 
 12
 The use of Sec. 209(b) was optional. The states could retain their income limits for eligibility used on January 1, 1972, or adopt the higher federal limit governing general welfare eligibility under SSI. However, Sec. 209(b) required states to operate a program assisting the medically needy. Providing coverage to the medically needy was no longer optional for the states electing the Sec. 209(b) option. Winter v. Miller, supra, at 278. North Carolina has elected to exercise the Sec. 209(b) option. Therefore, North Carolina may utilize its January 1, 1972 eligibility criteria, if these are more restrictive than the SSI criteria. Schweiker v. Gray Panthers, supra, 453 U.S., at 38, 101 S.Ct. at 2637.
 
 
 13
 The Department of Health and Human Services has long used the so-called "$6,000/6% rule" for calculating what property should be excluded from a person's Medicaid reserve. The "$6,000/6% rule" is a part of the SSI criteria and is used by all non-section 209(b) states. Under the rule, property may be excluded from an applicant's or recipient's reserve of property if it has equity value of less than $6,000 and earns an annual income equal to or greater than 6% of its value. If the property has equity value greater than $6,000 or earns an annual income of less than 6% of its value, it will be included in the recipient's or applicant's reserve.[3] The SSI further exempted the home (the principal place of residence) of an applicant or recipient and all of the land appurtenant to it from inclusion as a countable resource. The effect of these rules is to include non-home property as part of a Medicaid applicant's or recipient's reserve if this property does not meet the minimum income producing criteria. Thus, property that is not excluded from reserve becomes part of the total assets of the applicant or recipient and may make them ineligible for Medicaid assistance.
 
 
 14
 As a matter of practice, prior to September 1, 1983, North Carolina chose to exclude all income producing property from the reserve property calculation. However, effective September 1, 1983, North Carolina adopted the "$6,000/6% rule", at the insistence of the United States Department of Health and Human Services, in order to comply with the congressional mandate of TEFRA. This change in the Medicaid law, enacted by Congress in 1982, provided that a state plan for the medically needy:
 
 
 15
 ... must include a description of ... (III) the single standard to be employed in determining income resources eligibility for all such groups and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under the Supplemental Security Income Program in the case of groups consisting of the aged, blind or disabled individuals in a state in which such program is in effect.... 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III).
 
 
 16
 The $6,000/6% rule is a more restrictive eligibility criteria than North Carolina used on January 1, 1972. Since the preexisting North Carolina rule for determining reserve property is less restrictive than the SSI rule, the Department of Health and Human Services informed the North Carolina Department of Human Resources that it must adopt the "$6,000/6% rule" as a result of the TEFRA amendments.
 
 II.
 Proceedings Below
 
 17
 This action was originally filed in the district court on behalf of Mamie Morris pursuant to 42 U.S.C. Sec. 1983 and Title XIX of the Social Security Act seeking continued Medical Assistance under the Act. Morris v. Morrow, 601 F.Supp. 1184 (W.D.N.C.1984). On April 30, 1984, the District Court granted plaintiff's request for a temporary restraining order. The plaintiff amended her complaint alleging a class. On July 21, 1984, the court entered a preliminary injunction, and on July 31, 1984 the court certified a class action and expanded the injunction to cover the entire class.
 
 
 18
 The case was initiated to challenge North Carolina's use of the "$6,000/6% rule". Plaintiff, Mamie Morris, is an elderly nursing home patient. Her income is not sufficient to pay her nursing home charges. Therefore, Medicaid has been paying for most of the costs of her nursing home care. Mrs. Morris owns a home which she rents to her 65 year old daughter and 73 year old son-in-law. They pay her $75 a month in rent (i.e., $900 per year). The house and lot is valued at $37,190.
 
 
 19
 In October, 1983, Mrs. Morris received a letter from the Mecklenburg County Department of Social Services, which administers the Medicaid program in Mecklenburg County, North Carolina, stating that unless she made a good faith effort to sell her house her Medicaid benefits would be terminated. The threatened termination was due to North Carolina's adoption of the "$6,000/6% rule". Because Mrs. Morris owns income producing property that has a value in excess of $6,000 and that also produces an annual income of less than 6% of the property's value, it is not excluded from her reserve property under the "$6,000/6% rule". Several other individual plaintiffs as well as the plaintiff class face similar circumstances.
 
 
 20
 The parties filed cross-motions for summary judgment. On December 20, 1984 the district court entered summary judgment for the plaintiffs. The district court held that while a Sec. 209(b) state may "use eligibility requirements stricter than those under the SSI program, it requires those states electing the 209(b) option to apply eligibility rules that are no more restrictive than [that State's] January 1, 1972 rules." Morris v. Morrow, supra, at 1189. The district court enjoined the defendants from employing the "$6,000/6% rule". The court further held that the "$6,000/6% rule" was a "standard" and not a "methodology" and therefore North Carolina was not required under TEFRA, 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III), to adopt the SSI criteria. The district court rejected the argument that TEFRA required adoption of the "$6,000/6% rule" because the "provision involved contained no language expressly repealing Sec. 209(b)." Id. The district court concluded by stating that the "defendants have violated Sec. 209(b) through their application of the '$6,000/6% rule'. The preliminary injunction restraining defendants from terminating or denying Medicaid benefits on the basis of the '$6,000/6% rule' will now be made permanent." Id. at 1190. From this order the defendants appeal.
 
 
 21
 In a subsequent order dated March 20, 1985, the district court awarded plaintiffs the recovery of their attorneys fees including a 15% upward adjustment. Defendants appeal from this order as well. The district court stayed its order pending appeal. We agreed to review all of the issues and have consolidated the two appeals.
 
 
 22
 On appeal, both the defendants and the Secretary of Health and Human Services, as amicus curiae, challenge the district court's holding that: (1) Sec. 209(b) requires states (which exercise the option provided in that section) to use criteria which were in effect under the state's January 1, 1972 plan even though those criteria are less restrictive than those of the SSI program; and, (2) that the "$6,000/6% rule" is a "standard" rather than a "methodology" and thus is not subject to the TEFRA requirements that the states use the same methodology for determining Medicaid eligibility of the medically needy.
 
 III.
 The Sec. 209(b) Option
 
 23
 North Carolina elected to become a Sec. 209(b)[4] state and retain the more restrictive eligibility requirements it used on January 1, 1972. The district court erroneously concluded that Sec. 209(b) requires the state, exercising the option therein, to retain the eligibility criteria for Medicaid eligibility employed in 1972 "notwithstanding any other provision" of Title XIX. We believe that the district court's interpretation is contrary to the language and purpose of Sec. 209(b). Section 209(b) does not provide an independent basis for Medicaid eligibility, but is merely an exception that permits States to exclude those individuals who would not have been eligible for Medicaid in 1972 prior to the passage of the Supplemental Security Income Act.
 
 
 24
 Despite its semantic complexity, we believe one thing is clear about Sec. 209(b): it was designed solely to relieve states of a potential burden at their option. The burden would arise from an otherwise uniform national standard which, with respect to some states, would have been broader than the standard in force in that state. The phrase "Notwithstanding any other provision ... no state shall be required to provide medical assistance...." should be read as an exception to the provision which imposes the requirement to provide Medicaid to the aged, blind and disabled. That provision is found at 42 U.S.C. Sec. 1396a(a)(10)(A)(i)(II).
 
 
 25
 Because the Sec. 209(b) option only exempts states from the requirement of covering all SSI recipients, it does not confer authority upon states to create broader eligibility standards than exist nationally for SSI. The Supreme Court has explained the Sec. 209(b) option as providing states with an election "to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972" Schweiker v. Gray Panthers, supra, 453 U.S., at 38-39, 101 S.Ct. at 2638. The Court in Schweiker v. Hogan, supra, 457 U.S., at 571-72, 102 S.Ct. at 2600 confirmed that 42 U.S.C. Sec. 1396a(a)(10), rather than Sec. 209(b) makes individuals eligible for Medicaid:
 
 
 26
 The Medicaid program was established for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. [citations omitted.] Section 1902(a)(10) of the Act, 42 U.S.C. Sec. 1396a(a)(10), sets forth the basic scope of the program, which has not changed significantly from its enactment in 1965. Id. [emphasis added.]
 
 
 27
 We followed the Supreme Court's reasoning in Randall v. Lukhard, supra, at 265, wherein we stated that "[t]he purpose of the Sec. 209(b) option was simply to permit the states to assist only those persons whom the states were required to assist prior to the expansion of categorical assistance." Id.
 
 
 28
 Therefore, Sec. 209(b) is a limited exception to the eligibility rules of 42 U.S.C. Sec. 1936a(a)(10), and permits states to exclude individuals who would otherwise be eligible under that section. It follows that if an individual is not eligible under the rules of 42 U.S.C. Sec. 1396a(a)(10), then Sec. 209(b) is irrelevant to the determination of Medicaid eligibility. Thus, a Sec. 209(b) state is not bound by the local limits set in its 1972 Medicaid plan, if the federal government subsequently sets more restrictive limits.
 
 
 29
 This interpretation of the Sec. 209(b) option is supported by the legislative history of the provision. The House Committee Report on the provision characterized it as follows:
 
 
 30
 Under present law, states are required to cover under Medicaid all people eligible for cash assistance payments. If this provision were carried over into the new assistance programs, many thousands of additional people the great majority of whom would be people made newly eligible for assistance to the aged, blind, and disabled, would be required to be covered under Medicaid. In view of the serious financial and other problems of many State Medicaid programs, your committee decided not to require the States to cover the newly eligible, but rather leave the decision up to each individual State. Your committee's bill would, therefore, provide that despite any other requirements of Title XIX, no State shall be required to provide Medicaid coverage to any individual or family member in any month where such person would not have been eligible for such assistance under the State plan in effect on January 1, 1971.[5]
 
 
 31
 H.R.Rept. No. 92-231, 92d Cong. 1 St.Sess. at 197, U.S.Code Cong & Admin.News 1972, p. 4989.
 
 
 32
 Similarly, the Senate Committee Report supports this reading of the Sec. 209(b) option:
 
 
 33
 No State would be required to furnish medical assistance to any individual receiving aid as a needy aged, blind, or disabled adult unless the State would be (or would have been) required to furnish such assistance to such individual under its medical plan that was in effect on January 1, 1972. S.Rept. No. 92-1230, 92d Cong., 2d Sess. at 48.
 
 
 34
 These explanations demonstrate that under the Sec. 209(b) option states were required to cover only SSI recipients who also were eligible under the criteria used under the state's January 1, 1972 state plan. The sole purpose of Sec. 209(b) was to protect states from the fiscal burden of the broader SSI standards enacted in 1972. The Sec. 209(b) option does not apply to situations, as the one presented here, where the SSI standards are more restrictive than the standard employed by a Sec. 209(b) state prior to January 1, 1972. Therefore, the district court erred in holding that North Carolina's employment of the "$6,000/6% rule" was in violation of Sec. 209(b).
 
 IV.
 The "$6000/6% Rule" is a Methodology
 
 35
 Because Sec. 209(b) is only an exception which excludes individuals from Medicaid, the district court's reasoning that TEFRA does not require North Carolina to adopt the "$6000/6% rule" is incorrect. The district court concluded that TEFRA was subordinate to Sec. 209(b) because it does not expressly repeal Sec. 209(b). As explained earlier, Sec. 209(b) is applicable only when the SSI eligibility criteria are broader than the criteria used by the State in 1972. However, in this case the SSI criteria, as amended by TEFRA, are more restrictive than North Carolina's 1972 practice. Therefore, Sec. 209(b) is inapplicable.
 
 
 36
 Congress, through 42 U.S.C. Sec. 1396a(a)(10), contemplated a hierarchy which recognizes that one must first be eligible for SSI assistance under federal law, before one may be excluded under a state's more restrictive 1972 practice tolerated as a Sec. 209(b) exception. See Schweiker v. Gray Panthers, supra, 453 U.S., at 38, 101 S.Ct. at 2637. The district court's application of the law would simply invert the intent of Congress and allow a result in which an individual, clearly ineligible for SSI assistance under the federal law, is made eligible by a particular state's law.
 
 
 37
 More fundamentally, the district court's analysis was flawed by its conclusion that the means of determining whether property was exempt as "income producing" was a "standard" rather than a "methodology". Had the district court correctly understood that it was not a "standard", it would have relied upon 42 C.F.R. Sec. 435.845(e), which outlines the determination of eligibility on the basis of resources for the medically needy, rather than 42 C.F.R. Sec. 435.841.[6] Morris v. Morrow, supra, at 1189. The regulation the district court should have relied upon, 42 C.F.R. Sec. 435.845(e)(1), provides as follows:
 
 
 38
 Sec. 845.845 Medically needy resource eligibility.
 
 
 39
 (e)(1) For aged, blind, or disabled individuals in States using requirements more restrictive than SSI, deduct the value of resources in an amount no more restrictive than those deducted under the Medicaid plan on January 1, 1972 and no more liberal than those deducted in determining eligibility under SSI. Id. [emphasis added.]
 
 
 40
 The district court, therefore, erroneously ignored the relevant regulation. Moreover, we believe that the "$6,000/6% rule" is a part of a methodology for determining eligibility under a single resource standard and that North Carolina must apply "the same methodology which would be employed under the Supplemental Security Income Program" in the case of the medically needy. 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III).
 
 
 41
 An "eligibility standard" is an ultimate amount against which resources are computed to determine whether an individual is eligible for Medicaid. If an individual has resources in excess of that amount, the individual will not be eligible for Medicaid. By contrast "eligibility methodology" is the method of computing how much income or resources an individual has which will be measured against the standard. A methodology provides an amount which must then be adjusted by the budget period employed by the state and which is then applied against a standard for that budget period to determine eligibility. The application of a methodology does not result in the individual being eligible or ineligible. This ultimate result may be ascertained only when the amount produced by the methodology is compared against the standard.
 
 
 42
 The applicable TEFRA Amendment, 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III), supra, provides that there is a "single standard" for income and for resources, and the methodology is the process for "determining" eligibility under this standard. Since there can only be a single resource standard, it must be a basic, universal criterion. In this case, the North Carolina resource standard provides that an individual may have a maximum of $1000 in accountable property. Every other rule which is part of the process of determining eligibility under this standard is part of the methodology. The "$6000/6% rule" is a method for determining whether a piece of property is included in the $1000 reserve of assets standard.
 
 
 43
 The Medicaid statute does not define the term "methodology" or "standard". However, the legislative history of the TEFRA provisions makes it clear that it was adopted as a reaction to the Department of Health and Human Services regulations which were issued to implement the provision. The preamble to those regulations used the term "standard" in its discussion of the "Medically Needy Income Level", 46 Fed.Reg. 47979 as synonymous with income level. A separate section of the preamble, "Treatment of Income and Resources" discusses the concept of methodology. 46 Fed.Reg. 47980. The discussion of "methodology" identifies treatment of income and resources in such matters as deemed income, interest, court-ordered support payments, and infrequent and irregular income as illustrative of methodology. These examples demonstrate that "methodology" is a means of ascertaining the amount of income and resources which will be considered, rather than the ultimate standard.
 
 
 44
 Accordingly, the "$6000/6% rule" is a methodology and not a standard. Therefore, the district court's conclusion that the "$6000/6% rule" was a standard and as such not required by the TEFRA Amendments must be reversed. It further follows that 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III) requires that North Carolina adopt the more restrictive "$6000/6% rule" as the proper methodology to determine what property should be exempt in the calculation of a Medicaid recipient's or applicant's reserve of property.
 
 V.
 Conclusion
 
 45
 We believe that the decision of the district court must be reversed. The "$6000/6% rule" is a methodology used to determine the income eligibility of a Medicaid recipient or applicant. The TEFRA Amendments of 1982 did act to modify the Sec. 209(b) option rules which were previously in effect in North Carolina by requiring North Carolina to use the same methodology. Because the "$6000/6% rule" is already more restrictive than North Carolina's 1972 practice, Sec. 209(b) does not apply. Section 209(b) was designed solely to relieve states of the potential burden of the broader national SSI criteria and was not meant to require, or allow, a state, exercising the option, to use a more liberal standard than that required by Congress. Under this interpretation, North Carolina is not permitted to apply eligibility requirements that are broader than those used by the SSI. The award of attorneys fees to the plaintiffs must be disallowed on the basis that the plaintiffs have failed to prevail.
 
 
 46
 REVERSED.
 
 
 
 [1]
 The categorically needy were those entitled to assistance under four programs: Old Age Assistance, 42 U.S.C. Sec. 301, et seq. (1970 Ed.); Aid to Families With Dependent Children, Sec. 601 et seq.; Aid to the Blind, Sec. 1201 et seq.; and Aid to the Permanently and Totally Disabled, Sec. 1351 et seq. See also 42 U.S.C. Secs. 1381-1385 (1970 Ed.)
 
 
 [2]
 Section 209(b) reads as follows:
 Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section, no State not eligible to participate in the State plan program established under sub-chapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of sub-chapter XVI of this chapter) for any month unless such state would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such state plan, if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with Sec. 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. In States which provide medical assistance to individuals pursuant to clause (10)(C) of subsection (a) of this section, an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under clause (10)(A) of that subsection if that individual is, or is eligible to be (1) an individual with respect to whom there is payable a State supplementary payment on the basis of which similarly situated individuals are eligible to receive medical assistance equal in amount, duration, and scope to that provided to individuals eligible under clause (10)(A), or (2) an eligible individual, or eligible spouse, as defined in subchapter XVI of this chapter, with respect to whom supplemental security income benefits are payable otherwise that individual shall be considered to be an individual eligible for medical assistance under Clause (10)(C) of that subsection. In states which do not provide medical assistance to individuals pursuant to clause (10)(C) of that subsection, an individual who is eligible for medical assistance by reason of the requirements of this section concerning deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under Clause (10)(A) of that subsection.
 
 
 [3]
 This rule is found in United States Department of Health and Human Services, Social Security Administration, Program Operations Manual System, Supplemental Security Income at Sec. 01140.100 (1983) and reads in pertinent part as follows:
 Non-home property that is used in a business or non-business self-support activity is excluded from resources when the individual's "or spouse" equity in the property does not exceed $6,000 and the activity produces a net annual return of at least 6% of the excludable equity value ... Where the property is not excludable because the net annual return is less than 6% of the equity value, the total equity value is an includable resource ... if more than one income-producing activity is involved, the total excludable equity value of all income producing activities will not exceed $6,000 and the rate of return must equal at least 6% of the equity for each activity.
 
 
 [4]
 See, supra note 2
 
 
 [5]
 In a subsequent amendment the January 1, 1972 date was substituted in place of the January 1, 1971 date
 
 
 [6]
 The entire regulation is as follows:
 Sec. 435.841 Medically needy resource standard: Reasonableness.
 (a) The agency must use a medically needy resource standard that is reasonable, according to the provisions of this section.
 (b) The following medically needy resource standards are presumed to be reasonable:
 (1) The agency provides one medically needy resource standard for all covered medically needy groups. Except as provided in paragraph (c) of this section, the standard must at least equal the highest resource standard used to determine eligibility in the cash assistance programs related to the covered medically needy groups.
 (2) The agency provides a different medically needy resource standard for each covered medically needy group. Except as provided in paragraph (c) of this section, the standard for each covered group must at least equal the highest resource standard used to determine eligibility in the cash assistance program related to that covered medically needy group.
 (c) In the case of an agency that provides Medicaid for the aged, blind, or disabled individuals only if they meet more restrictive requirements than used under SSI, the following provisions apply:
 (1) The agency may use a resource standard for those individuals that is lower than the standard specified in paragraph (b) of this section.
 (2) The lower standard must at least equal the medically needy resource standard for those aged, blind, or disabled individuals under the State's plan on January 1, 1972.
 (d) If the agency uses a medically needy resource standard not specified in paragraphs (b) and (c) of this section--
 (1) That standard is not presumed to be reasonable; and
 (2) HCFA must approve the standard.