914 F.2d 593
 31 Soc.Sec.Rep.Ser. 160, Medicare&Medicaid Gu 38,829
Lusby MOWBRAY; Sadie Mowbray, individually and on behalf of
all other similarly situated; Robert F. Gallimore, Sr.;
Gertie M. Carter; Hubert Clouse; George W. Short; Martha
Vane; Annie L. Young, Plaintiffs-Appellees,
and
Mae Hottinger; Dolan Hottinger, Plaintiffs,
v.
Bruce U. KOZLOWSKI, individually and in his official
capacity as Director of the Virginia Department of
Medical Assistance, Defendant-Appellant,
and
Louis W. Sullivan, Secretary of Health and Human Services,
Defendant.
Lusby MOWBRAY; Sadie Mowbray, individually and on behalf of
all others similarly situated; Robert F. Gallimore, Sr.;
Gertie M. Carter; Hubert Clouse; George W. Short; Martha
Vane; Annie L. Young, Plaintiffs-Appellees,
and
Mae Hottinger; Dolan Hottinger, Plaintiffs,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellant,
and
Bruce U. Kozlowski, individually and in his official
capacity as Director of the Virginia Department of
Medical Assistance, Defendant.
 Nos. 89-3355, 89-3381.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 9, 1990.
Decided Sept. 21, 1990.
 
 David Ruvane Smith, Office of the Gen. Counsel, U.S. Dept. of Health and Human Services, Washington, D.C., Virginia Rose Manhard, Asst. Atty. Gen., Richmond, Va., argued (John Perry Alderman, U.S. Atty., Roanoke, Va., Mary Sue Terry, Atty. Gen., R. Claire Guthrie, Deputy Atty. Gen., Roger L. Chaffe, Sr. Asst. Atty. Gen., Pamela M. Reed, Asst. Atty. Gen., Richmond, Va., on brief), for defendants-appellants.
 Jeanne Finberg, National Senior Citizens Law Center, Los Angeles, Cal., argued (Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., Margaret T. Schenck, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., Robert J. Golcheski, Virginia Legal Aid Soc., Inc., Lynchburg, Va., John E. Whitfield, Blue Ridge Legal Services, Inc., Harrisonburg, Va., Claire E. Curry, Charlottesville-Albemarle Legal Aid Soc., Inc., James W. Spear, Central Virginia Legal Aid Soc., Inc., Richmond, Va., on brief), for plaintiffs-appellees.
 Before ERVIN, Chief Judge, and CHAPMAN and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 The question before us is whether certain Virginia criteria for Medicaid eligibility violate the federal Medicaid statute. The answer requires us to reconcile two seemingly contradictory provisions of the Medicaid program. Section 209(b) of the Supplemental Security Income Program, 42 U.S.C. Sec. 1396a(f), permits Virginia and certain other states to employ Medicaid eligibility criteria that are more restrictive than the corresponding federal eligibility criteria. The issue here is whether Virginia's relatively restrictive criteria violate Sec. 303(e) of the Medicare Catastrophic Coverage Act, 42 U.S.C. Sec. 1396a(r)(2), which provides that a state's Medicaid eligibility criteria "may be less restrictive, and shall be no more restrictive" than the federal criteria. The district court determined that Sec. 303(e) repeals that portion of Sec. 209(b) that allows state Medicaid criteria to be more restrictive than the federal criteria, and held that Virginia's more restrictive eligibility guidelines violated Sec. 303(e). In so holding, the court rejected the Secretary of Health and Human Service's interpretation of the Medicaid statute.
 
 
 2
 After carefully reviewing the Medicaid scheme, we conclude that Sec. 303(e) does not partially repeal Sec. 209(b), and thus that Virginia's relatively more restrictive Medicaid eligibility criteria do not violate Sec. 303(e). We do so for two reasons. First, Congress has not spoken with the clarity that Pennhurst v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981), requires before the federal government can change the conditions on a grant of federal monies to the states. Second, the Secretary offers a reasonable interpretation of the two provisions in issue which harmonizes them and which, in light of the ambiguity in the statutory scheme, warrants our deference.
 
 
 3
 We therefore reverse the judgment of the district court.
 
 I.
 
 4
 Plaintiffs are a class of blind, disabled, or aged persons who would qualify for Medicaid under the federal methodologies located in the Supplemental Security Income Program ("SSI"), 42 U.S.C. Secs. 1381 et seq., but whose ownership of land contiguous to their homes renders them ineligible for Medicaid under Virginia's relatively more restrictive eligibility criteria. The federal program excludes a claimant's home site and all contiguous property from the computation of resources for Medicaid eligibility purposes, 42 U.S.C. Sec. 1382b(a)(1), while Virginia's program only allows for the home site and $5000 worth of contiguous property to be excluded. Va.Code Sec. 32.1-325(A)(3).
 
 
 5
 Plaintiffs brought this Sec. 1983 class action on February 10, 1989, against the Secretary of the Department of Health and Human Services and Bruce Kozlowski, the Director of the Virginia Department of Medical Assistance. They sought a declaration that Virginia's relatively restrictive Medicaid eligibility criteria violate section 303(e) of the Medicare Catastrophic Coverage Act of 1988, 42 U.S.C. Sec. 1396a(r)(2), which provides that a state's methodology for determining Medicaid eligibility "may be less restrictive, and shall be no more restrictive, than the methodology [used in the federal SSI program]." In addition, plaintiffs sought to enjoin Virginia from employing its relatively restrictive Medicaid criteria.
 
 
 6
 On October 25, 1989, the district court ruled that Virginia's Medicaid eligibility guidelines violated Sec. 303(e) to the extent that they used income and resource methodologies that were more restrictive than the methodologies used in the SSI program, and entered a permanent injunction prohibiting Virginia from enforcing them. Mowbray v. Kozlowski, 724 F.Supp. 404 (W.D.Va.1989). The district court rejected the state's argument that its eligibility criteria were justified by Sec. 209(b) of SSI, 42 U.S.C. Sec. 1396a(f), which, "notwithstanding any other provision" of the Medicaid statute, allows the Medicaid criteria of certain states to be more restrictive than the federal criteria. It held, to the contrary, that Sec. 303(e) repealed that part of Sec. 209(b) that allows those states to employ more restrictive criteria.
 
 
 7
 On October 25, 1989, the district court denied Virginia's request for a stay of the district court's judgment pending appeal, but this court granted a stay on January 24, 1990.
 
 
 8
 The Secretary and the Director now appeal.
 
 II.
 
 9
 Resolution of this case requires us to review at the outset the relevant provisions of the Medicaid statute.
 
 
 10
 The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396 et seq., is a cooperative federal-state public assistance program that makes federal funds available to states electing to furnish medical services to certain impoverished individuals. "States choosing to participate in the program are required to follow federal guidelines," Morris v. Morrow, 783 F.2d 454, 456 (4th Cir.1986), and "must comply with requirements imposed both by the Act itself and the Secretary of Health and Human Services." Schweiker v. Gray Panthers, 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981).
 
 
 11
 Medicaid benefits were historically available to two groups: the categorically needy and the medically needy. The categorically needy included those persons who already qualified for benefits under four other federal assistance programs: Old Age Assistance, 42 U.S.C. Secs. 301 et seq. (1970 ed.), Aid to Families With Dependent Children, 42 U.S.C. Secs. 601 et seq. (1970 ed.), Aid to the Blind, 42 U.S.C. Secs. 1201 et seq. (1970 ed.), and Aid to the Permanently and Totally Disabled, 42 U.S.C. Secs. 1351, et seq. (1970 ed.). See Gray Panthers, 453 U.S. at 37, 101 S.Ct. at 2637. The medically needy included those whose income and assets were too high to qualify for a categorical program, but who otherwise met the criteria for the categorically needy. Morris, 783 F.2d at 456. The medically needy were "relatively more affluent aged, blind or disabled persons [who] bec[a]me eligible for Medicaid only if their income and assets were insufficient to meet the cost of necessary medical or remedial health care and services." Id. Medicaid required states to provide coverage for the categorically needy, but not for the medically needy. Gray Panthers, 453 U.S. at 37, 101 S.Ct. at 2637.
 
 
 12
 In 1972, Congress enacted the Supplemental Security Income Program ("SSI"), 42 U.S.C. Secs. 1381 et seq. This program repealed prior assistance programs for the aged, blind, and disabled, and federalized welfare eligibility standards for these categorically needy persons. Gray Panthers, 453 U.S. at 38, 101 S.Ct. at 2637.[1] In general, the new SSI eligibility standards were more generous than some of the previously established state criteria. Id. As a result, the more generous federal standards "threatened to swell the Medicaid rolls and place a large financial burden on those states." Morris, 783 F.2d at 456. States participating in the Medicaid program thus faced a choice between increasing expenditures for Medicaid, or dropping the program altogether.
 
 
 13
 To address this difficulty, Congress included Sec. 209(b) in SSI. Codified at 42 U.S.C. Sec. 1396a(f), section 209(b) provides, in pertinent part:
 
 
 14
 Notwithstanding any other provision of [the Medicaid Act], ... no State ... shall be required to provide medical assistance to any aged, blind, or disabled individual ... unless such State [would have been required to do so under its pre-1972 Medicaid regulations].
 
 
 15
 (Emphasis added.)[2] Section 209(b) allowed states which had used more restrictive criteria than those subsequently enacted in SSI to continue using those more restrictive criteria after the 1974 effective date of the SSI Program. States had the option of adopting Sec. 209(b) or of adopting the more generous federal criteria. However, if a state adopted Sec. 209(b) and retained its more restrictive eligibility standards, it was required to provide benefits for the medically needy. Morris, 783 F.2d at 457.
 
 
 16
 Virginia had relatively restrictive pre-SSI income/resource qualification criteria, and opted to become a Sec. 209(b) state. Virginia's criteria differ from the federal SSI standard, in relevant part, in the following manner. The federal SSI standard for the medically needy excludes from the computation of resources the claimant's house and lot, as well as all real property contiguous to the claimant's home site. 42 U.S.C. Sec. 1382b(a)(1). Virginia, by contrast, excludes from the resource computation only the claimant's house and the lot on which it stands, plus no more than $5000 of additional property. Va.Code Sec. 32.1-325(A)(3). Virginia's standard allows less property value to be excluded from the computation of income and assets, and is thus more restrictive than the federal standard. Section 209(b) clearly allowed Virginia to employ these more restrictive criteria; the controversy in this case concerns the effect on section 209(b) of subsequent amendments to the Medicaid scheme.
 
 
 17
 In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act (TEFRA), Pub.L. No. 97-248, 96 Stat. 324 (1982), which amended the Medicaid Act to provide that a state plan for the medically needy must include a description of:
 
 
 18
 the single standard to be employed in determining income and resource eligibility for [the medically needy], and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under the [SSI] program in the case of groups consisting of aged, blind or disabled individuals in a State in which such program is in effect....
 
 
 19
 42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III) (1982). The Health Care Financing Administration (HCFA), the agency that administers the Medicaid Act, and the courts began to apply this provision to require states to use the same methodology for the medically needy as the SSI program. In response, Congress passed a moratorium in 1984 prohibiting HCFA from imposing monetary penalties on states for the use of less restrictive eligibility criteria, as long as the criteria did not "make ineligible any individual who would be eligible" under the prior scheme. Deficit Reduction Act (DEFRA), Pub.L. No. 98-369, Sec. 2373(c)(1), 98 Stat. 494, 1112 (1984), as amended by Pub.L. No. 100-93, Sec. 9, 101 Stat. 680, 695 (1987).[3] This moratorium applied retroactively to October 1, 1981, the effective date of the TEFRA provision. See S.Rep. No. 109, 100th Cong., 1st Sess. 25, reprinted in 1987 U.S.Code Cong. & Admin.News 682, 706.
 
 
 20
 In 1987, Congress replaced this moratorium with an amendment to the Medicaid statute. This amendment, found in section 303(e) of the Medicare Catastrophic Coverage Act (MCCA), Pub.L. No. 100-360, Sec. 303(e), 102 Stat. 683, 763 (1988), as amended by Pub.L. No. 100-485, Sec. 608(d), 102 Stat. 2343, 2418 (1988), codified at 42 U.S.C. Sec. 1396a(r)(2), provides in pertinent part:
 
 
 21
 The methodology to be employed in determining income and resource eligibility [in 209(b) states] ... may be less restrictive, and shall be no more restrictive, than the methodology [used in the SSI program] ...
 
 
 22
 For the purposes of this subsection ..., methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.[4]
 
 
 23
 The question presented in this case is the continuing validity of Sec. 209(b) in light of the language set forth in Sec. 303(e).
 
 III.
 
 24
 The controversy involves what at first glance appears to be a contradiction in the Medicaid statute. Section 209(b) states that "notwithstanding any other provision of [the Medicaid Act]," a state may employ more restrictive Medicaid eligibility criteria for the aged, blind, and disabled than the federal criteria found in the SSI Program. However, section 303(e), a later statute, provides that a state's methodology for determining Medicaid eligibility "may be less restrictive, and shall be no more restrictive, than the methodology [used in the SSI program]." Plaintiffs resolve this incongruity by contending that Sec. 303(e) partially repeals Sec. 209(b). The Secretary and Commonwealth counter that Secs. 209(b) and 303(e) are not in conflict, and offer a harmonious reading of the two provisions that retains Virginia's right to be more restrictive.
 
 
 25
 To settle this dispute about the proper integration of Secs. 209(b) and 303(e), we are guided by three elementary principles of statutory construction. First, we must try to give full effect to each of the statutory provisions at issue. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).
 
 
 26
 Second, because the purported partial repeal of Sec. 209(b) would alter the conditions under which federal monies were granted to the states, Congress can only effect such a repeal through a clear and plain statement. As the Supreme Court explained in Pennhurst State School v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981):
 
 
 27
 [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.
 
 
 28
 (Citations omitted.) "The rule of statutory construction invoked in Pennhurst [is] ... a tool with which to divine the meaning of otherwise ambiguous statutory intent." EEOC v. Wyoming, 460 U.S. 226, 244 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983). Obviously, the states must not be left to guess at federal intentions in their own budgetary planning process. Here, plaintiffs' reading of section 303(e) would dramatically change the terms of the Medicaid "contract" between the federal government and the states. If Congress intended to effect this change, it needed to "speak with a clear voice." Pennhurst, 451 U.S. at 17, 101 S.Ct. at 1540.
 
 
 29
 Finally, under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-2783, 81 L.Ed.2d 694 (1984), we must accord proper deference to the Secretary's interpretation of the Medicaid statute. A federal court need not defer to an agency's construction of its governing statute if the construction violates an unambiguous statutory command; but deference is appropriate if the statute is ambiguous or unclear on the point in issue and the agency's interpretation is based on a permissible construction of the statute. Id.; see also Sullivan v. Everhart, --- U.S. ----, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990). These tenets of deference "apply fully to the Secretary [of HHS's] administration of the [Social Security] Act." Everhart, 110 S.Ct. at 964. The reasons for deferring to the Secretary are manifold:
 
 
 30
 The agencies that administer statutes have greater expertise in interpreting them, and are in a position to provide nationally uniform interpretations of statutory terms. This informed and consistent interpretation is preferable to the varying interpretations likely to result from the episodic interventions of the courts.
 
 
 31
 Wilson v. Lyng, 856 F.2d 630, 636 (4th Cir.1988). Judicial deference is especially appropriate in the area of welfare administration:
 
 
 32
 In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in the light of experience in the field. If the result is unacceptable to Congress, it has only to clarify the situation with language that unambiguously specifies its intent.
 
 
 33
 Lukhard v. Reed, 481 U.S. 368, 383-84, 107 S.Ct. 1807, 1816-17, 95 L.Ed.2d 328 (1987) (Blackmun, J., concurring in judgment).
 
 IV.
 
 34
 With these principles in mind, we turn to consider the Medicaid statute. Our analysis proceeds in two steps. We first explore the language of the Medicaid statute to determine whether Sec. 303(e) does in fact repeal Sec. 209(b). If it does, our inquiry ends, and the Secretary's contrary interpretation warrants no deference. However, if Sec. 303(e) does not plainly repeal Sec. 209(b), we then must consider seriously the Secretary's interpretation of the two provisions to see if it is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2781. If it is, we must defer to the Secretary's judgment.
 
 A.
 
 35
 Plaintiffs argue that the plain language of Sec. 303(e) demonstrates that it repeals Sec. 209(b). They point out that Sec. 303(e) specifically references Sec. 209(b) states as among those whose methodologies can be "no more restrictive" than the federal SSI standards. They add that because Sec. 303(e) was enacted after Sec. 209(b), the "notwithstanding any other provision" language in Sec. 209(b) is inapplicable. Based on this reading, plaintiffs argue that Congress' intention is clear and that the Secretary's construction of Sec. 303(e) deserves no deference.
 
 
 36
 We find the statutory scheme here to be more complex than plaintiffs suggest. Of course, it must be admitted that the plain language of Sec. 303(e) is in apparent tension with Sec. 209(b), for whereas the latter explicitly allows states to maintain more restrictive methodologies, the former appears to prevent states from doing so. This tension alone, however, does not mean that Sec. 303(e) repeals Sec. 209(b). Several other provisions of the Medicaid statute provide powerful evidence that plaintiffs' interpretation of the meaning of Sec. 303(e) cannot be the prevailing one.
 
 
 37
 First, section 209(b) emphatically states that it applies "notwithstanding any other provision" of the Medicaid statute. Section 303(e) is plainly another provision of the statute whose existence is the very thing that the "notwithstanding" language contemplates. Plaintiffs try to attenuate the significance of the "notwithstanding" language by asserting that it only pertains to provisions enacted prior to Sec. 209(b). This argument lacks merit. Section 209(b) was itself part of SSI, and was enacted precisely to allow qualified states to avoid the adverse consequences of the federalization of the cash benefit programs for the aged, blind, and disabled in that statute. Section 209(b) establishes the method by which conflicts between relatively restrictive pre-SSI state criteria and subsequently enacted federal standards should be resolved. If the "notwithstanding" clause applied only to provisions enacted prior to Sec. 209(b), it would have no meaning whatsoever, because nothing prior to the enactment of Sec. 209(b) could have been in conflict with it.
 
 
 38
 More importantly, Sec. 209(b) was amended as recently as 1989, two years after the enactment of Sec. 303(e), to add three explicit exceptions to its coverage. See Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101-239, Secs. 6408(d)(4)(c), 6411(a)(1), & 6411(e)(2), 103 Stat. 2106, 2269, 2270, & 2271 (1989). These amendments are significant for two reasons. First, they reaffirm that Sec. 209(b) continues to have general application "notwithstanding" other provisions of the Medicaid statute. Thus, even on plaintiffs' reading that the "notwithstanding" language applies only retroactively, the 1989 reaffirmation of Sec. 209(b) applies to the previously enacted Sec. 303(e). Second, the 1989 amendments provide strong independent evidence that Sec. 209(b) was not repealed by Sec. 303(e). Section 303(e) was not included in the list of explicit exceptions to the application of Sec. 209(b) added in 1989. The 1989 amendments to Sec. 209(b) demonstrate that when Congress intended to limit the scope of Sec. 209(b), it did so plainly in Sec. 209(b) itself.
 
 
 39
 In addition, the fact that Sec. 303(e) was enacted to apply retroactively provides powerful evidence that the section was not intended to repeal Sec. 209(b). Section 303(e) was enacted in 1988, but its effective date was October 1, 1982. H.Conf.Rep. No. 661, 100th Cong., 2d Sess. 268, reprinted in 1988 U.S.Code Cong. & Admin.News 923, 1046. If Sec. 303(e) repealed Sec. 209(b), then it would retroactively invalidate Sec. 209(b) states' use of more restrictive methodologies during the years 1982-1988, a time during which such relatively restrictive methodologies were clearly legal. Plaintiffs offer no reason why Congress would want to invalidate six years of settled Medicaid practice by the states, and without strong evidence in the Medicaid scheme itself, we are disinclined to read the statute to produce that result.
 
 
 40
 Further evidence that Sec. 303(e) did not repeal Sec. 209(b) is found in Sec. 303(f) of the Medicare Catastrophic Coverage Act, which directly follows Sec. 303(e). Section 303(f) requires Missouri, a Sec. 209(b) state, to exclude from its calculation of countable resources the "home" of an individual applying for Medicaid benefits in the state as of October 1, 1989. However, federal SSI methodologies already required the home and all contiguous property to be excluded from countable resources. If, as plaintiffs contend, the relatively restrictive budget methodologies provided for by Sec. 209(b) were eliminated by Sec. 303(e) and replaced by a requirement to be no more restrictive than the federal SSI standards, the Missouri provision would have been redundant and thus unnecessary.
 
 
 41
 The legislative history of section 303(f) casts further doubt on plaintiffs' reading of section 303(e). When a statutory scheme is clear on its face, of course, recourse to legislative history is inappropriate, but where, as here, the statutory scheme is ambiguous, legislative history can legitimately be used as an aide to ascertaining Congressional intent. Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109 S.Ct. 1676, 1683, 104 L.Ed.2d 113 (1989). A Congressional Report explained the meaning of Sec. 303(f) as follows:
 
 
 42
 [T]he State of Missouri must not count as a resource the home (of any value) of an aged, blind, or disabled individual who applies for Medicaid on or after October 1, 1989. This requirement would apply only to the home; the State could, but would not be required to, exclude the land that appertains to the house, as would be the case under SSI.
 
 
 43
 H.Conf.Rep. No. 661, 100th Cong., 2d Sess. 265, reprinted in 1988 U.S.Code Cong. & Admin.News 923, 1043 (emphasis added). This passage explicitly preserves the precise type of restrictive methodology--exclusion of appurtenant land--that Sec. 209(b) allows and that plaintiffs argue was eliminated by Sec. 303(e).
 
 
 44
 All of these factors render untenable plaintiffs' argument with respect to Sec. 303(e). At the very least, they show that the statutory scheme is profoundly ambiguous, and that Congress has not spoken with the clarity that Pennhurst requires before the federal government can change the terms of its Medicaid "contract" with the states. Such a disruption of the settled understandings between state and federal governments can only be achieved through plain language that would allow each state to assess the consequences of its Medicaid participation and the fiscal burdens that would flow from the application of federal welfare assistance requirements.
 
 B.
 
 45
 Despite the ambiguity in the Medicaid scheme and the lack of any plain statement partially repealing Sec. 209(b), plaintiffs' position might have some force absent a contrary reasonable interpretation of the significance of Sec. 303(e). However, the Secretary provides an alternate interpretation of Sec. 303(e) that harmonizes it with Sec. 209(b). The ambiguities in the statutory scheme outlined above require some deference to this interpretation. See Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-83. The Secretary is more familiar than the courts with the "[b]yzantine" Medicaid statute, see Gray Panthers, 453 U.S. at 43, 101 S.Ct. at 2640, and is in the best position to interpret the entire statute in its most coherent light.
 
 
 46
 The Secretary argues that Sec. 303(e) must be read in light of its purpose to codify the 1987 moratorium against HCFA's restrictive reading of the TEFRA amendments. As explained above, this moratorium ensured that HCFA and the courts could not penalize section 209(b) states for using budget methodologies that contained standards more generous than those in SSI. The Secretary maintains that far from curtailing the flexibility afforded to states by section 209(b), section 303(e) was actually designed to help states retain a different type of flexibility, namely, the flexibility to be more liberal if they desired.
 
 
 47
 Thus, on the Secretary's reading, Sec. 303(e)'s statement that state methodologies "may be less restrictive" than SSI methodologies is designed to ensure that states could use more liberal methodologies to evaluate Medicaid eligibility. The phrase in contention, that state methodologies "shall be no more restrictive," is, in the Secretary's view, nothing more than a condition on the allowance of liberality. Certain states had adopted methodologies that were more generous in the aggregate, but that were nonetheless more restrictive for particular individuals who would have qualified prior to the generally more liberal criteria. See, e.g., Camacho v. Perales, 786 F.2d 32, 35-37 (2d Cir.1986) (state's new criteria made ineligible certain previously eligible individuals despite being more generous in the aggregate). According to the Secretary, the "shall be no more restrictive" language in Sec. 303(e) simply ensures that an otherwise eligible person is not disadvantaged by the new, more generous criteria.
 
 
 48
 This interpretation of Sec. 303(e) fully comports with the subsequent explanation in Sec. 303(e) that a methodology is "no more restrictive" if "no individuals who are otherwise eligible are made ineligible for such assistance." This proviso reinforces the notion that Sec. 303(e) was designed to ensure that in providing more generous eligibility criteria, states cannot at the same time render ineligible persons who would qualify for benefits under the prior eligibility regime. In addition, the Secretary's interpretation makes sense of Sec. 303(e) while at the same time giving full effect to Sec. 209(b), which, "notwithstanding any other provision" of the Medicaid statute (including Sec. 303(e)), allows Virginia to employ more restrictive criteria. It also avoids the several antinomies that plague plaintiffs' construction of Sec. 303(e). For example, unlike the plaintiffs' account, the Secretary's interpretation is consistent with the Missouri homestead provision in Sec. 303(f), and avoids the difficulties inherent in the six-year retroactive application of Sec. 303(e).
 
 
 49
 In short, the Secretary's interpretation of Sec. 303(e) has much to recommend it, and in any event is at least as plausible as plaintiffs' explanation of Sec. 303(e). "[T]he [Secretary's] construction [of the Medicaid statute] need not be the only reasonable one in order to gain judicial approval." Connecticut Dep't. of Income Maintenance v. Heckler, 471 U.S. 524, 532, 105 S.Ct. 2210, 2214, 85 L.Ed.2d 577 (1985). The present case is an appropriate one for deference, and we accept the Secretary's reading of the statute as a reasonable one.
 
 V.
 
 50
 For the foregoing reasons, we conclude that Sec. 303(e) does not effect a repeal of Sec. 209(b), and that Virginia's relatively more restrictive Medicaid methodologies do not violate federal standards. The judgment of the district court is therefore reversed. In light of this disposition, we need not reach the other question raised on appeal concerning the scope of the certified class.
 
 
 51
 REVERSED.
 
 ERVIN, Chief Judge, concurring in part:
 
 52
 I am writing separately to indicate that, while I fully concur in most of the majority opinion, I do not believe it necessary to reach the issue addressed in Part IV(B). Because IV(B) contains an entirely separate and extraneous ground for the decision, I consider that section to be dicta--dicta with which I do not agree.
 
 
 53
 As explained by the majority, Pennhurst State School v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), requires an unambiguous, clear mandate by Congress to alter the conditions under which federal monies are granted to the states. See supra at 598. For the plaintiffs to succeed in this case, Congress would need to express more clearly its intent to repeal the option provided by section 209 for states to apply more restrictive criteria. The conflict in the language of section 209(b) and section 303(e) creates an ambiguity that cannot be resolved by examining the plain language of the statutes or their legislative histories. Therefore, I concur that, following the guidance of Pennhurst, we must reverse the judgment of the district court.
 
 
 54
 Nevertheless, I cannot agree that the Secretary has offered a reasonable interpretation to reconcile the conflict between section 209(b) and section 303(e). According to the Secretary, the phrase "shall be no more restrictive" is nothing more than a condition on the allowance of more liberal methodologies. Evaluating and dismissing this interpretation, the district court correctly observed:
 
 
 55
 None of the non-209(b) states, and certainly none of the states that wanted to be more generous, were going to be more restrictive. Why would Congress include the "no more restrictive" language if all it meant to do was allow states to be more liberal?
 
 
 56
 Mowbray, 724 F.Supp. 404, 414 (W.D.Va.1989). The explanation offered by the Secretary, that Congress intended this language to prohibit programs that are more generous in the aggregate, but in particular situations were in fact more restrictive, finds no support in the language of the Medicare Catastrophic Coverage Act or its legislative history. Therefore, I cannot concur with my brethren's reasoning in Section IV(B) of the majority opinion.
 
 
 57
 The plaintiffs in this case are those who have been referred to as "land poor": persons who live on family farms but who actually have very little, if any, income--often because they are no longer physically able to farm the land or because the land is unproductive. The practical effect of the confusion generated by these two conflicting statutes is to allow individual states to deny these persons Medicaid benefits. Until Congress acts to repeal or clarify these sections, this court must continue to uphold the right of states, such as Virginia, to apply their own more restrictive Medicaid eligibility criteria. I believe, however, that it is neither necessary nor proper to go beyond a dispositive holding here and give our stamp of approval to agency interpretations that do not reasonably follow from the language of the statutes or the legislative intent behind them. See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. at 843 n. 9, 104 S.Ct. at 2783 n. 9.
 
 
 58
 For these reasons, I respectfully decline to join in Part IV(B) of the majority opinion. I am, however, in agreement with the rest of the majority opinion and the result reached therein.
 
 
 
 [1]
 SSI did not federalize the program which provided aid to families with dependent children. Morris, 783 F.2d at 456
 
 
 [2]
 In relevant part, 42 U.S.C. Sec. 1396a(f) (1988) reads:
 Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section and section 1382h(b)(3) of this title, no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972.
 
 
 [3]
 The moratorium provided in part:
 The Secretary ... shall not take any compliance, disallowance, penalty, or other regulatory action against a State with respect to the moratorium period ... by reason of such State's plan ... (including any part of the plan operating pursuant to [the 209(b) option] ...), or the operation thereunder, being determined to be in violation of clause (IV), (V), or (VI) of [42 U.S.C. Sec. 1396a(a)(10)(A)(ii) ] or [42 U.S.C. Sec. 1396a(a)(10)(C)(i)(III) ] on account of such plan's (or its operation) having a standard or methodology which the Secretary interprets as being less restrictive than the standard or methodology required under such section, provided that such plan (or its operation) does not make ineligible any individual who would be eligible but for the provisions of this subsection.
 Pub.L. No. 98-369, Sec. 2373(c)(1), 98 Stat. 494, 1112 (1984), as amended by Pub.L. No. 100-93, Sec. 9, 101 Stat. 680, 695 (1987).
 
 
 [4]
 Section 303(e), 42 U.S.C. Sec. 1396a(r)(2) (1988), provides in full:
 (A) The methodology to be employed in determining income and resource eligibility for individuals under subsection (a)(10)(A)(i)(III), (a)(10)(A)(i)(IV), (a)(10)(A)(ii), (a)(10)(C)(i)(III), or (f) of this section or under section 1396d(p) of this title may be less restrictive, and shall be no more restrictive, than the methodology--
 (i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI of this chapter, or
 (ii) in the case of other groups, under the State plan most closely categorically related.
 (B) For purposes of this subsection and subsection (a)(10) of this section, methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.