Lillian GEE, Respondent,

v.

DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, Appellant.

No. WD 65693.

Missouri Court of Appeals,
Western District.

Dec. 12, 2006.

Gordon D. Gee, Kansas City, MO, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Lawrence D. Love and Linda Manlove–Braxton, Assistant Attorneys General, Kansas City, MO, for appellant.

Before BRECKENRIDGE, P.J., and HOWARD, and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

The Missouri Department of Social Services, Family Support Division ("Agency"), appeals from the circuit court's judgment reversing the Agency's decision to deactivate Lillian Gee's division of assets on the basis that she did not meet the definition of an "institutionalized spouse" because she was not in a Medicaid-certified bed. The Agency argues that its definition of "institutionalized spouse" as stated in 13 CSR 40–2.030(13)(A)(3)(B) did not unlawfully alter the definition found in 42 U.S.C. 1396r–5 of the Social Security Act, Title XIX, and is in compliance with federal statutes and rules as authorized under section 208.010.6 RSMo,[1] for the purpose of qualifying for medical assistance under the state's Medicaid program. Thus, the Agency argues, we should affirm the decision of the Director. We hold that the Agency erred in deactivating Gee's division of assets.

We affirm the judgment of the circuit court.

### Facts

In September 2003, Lillian Gee entered Bishop Spencer Place, a nursing facility located in Kansas City, Missouri. She contacted the Missouri Department of Social Services, Family Support Division, on November 7, 2003, to request that a division of assets be completed. A division of assets is performed when one spouse enters a nursing facility and the other remains in the community, allowing the spouse who has been "institutionalized" to become Medicaid eligible while alleviating the financial burden on the "community" spouse. The Agency completed the division of assets on March 8, 2004.

---

1. All statutory references to RSMo are to RSMo 2000 unless otherwise noted.

On March 12, 2004, the Agency received verification that Gee was not in a Medicaid-certified bed at Bishop Spencer Place. On March 15, 2004, the Agency mailed Gee an adverse action notice advising her that the division of assets was going to be deactivated and she did not meet the definition of an "institutionalized" spouse because she was not in a Medicaid-certified bed. On March 24, 2004, Gee requested an administrative hearing to contest the Agency's determination.

On April 29, 2004, a hearing was held before the representative of the Director of the Agency. The Director affirmed the Agency's decision in a decision and order dated August 19, 2004. The Director found that the Agency's determination that Gee did not meet the definition of an "institutionalized spouse" for purposes of the Medicaid program was correct because the requirement that an "institutionalized spouse" reside in a Medicaid-certified bed is found in the Code of State Regulations and the Agency's manual. Gee timely filed her notice and affidavit of appeal to the Jackson County Circuit Court on or about September 14, 2004.

On June 10, 2005, the circuit court entered a judgment reversing the Director's decision because the Agency's decision was not authorized by law and ordered the Agency to process Gee's division of assets as of November 7, 2003. The Agency appeals that judgment.

### Standard of Review

On appeal from a judgment of the circuit court reversing the decision of a state agency, the court of appeals reviews the decision of the agency and not the circuit court. *Psychiatric Healthcare Corp. of Mo. v. Dep't of Soc. Servs.,* 100 S.W.3d 891, 899 (Mo.App. W.D.2003). "Generally, in reviewing the decision of an administrative agency, appellate courts are limited to determining whether the decision is supported by competent substantial evidence upon the whole record, whether it is arbitrary, capricious, or unreasonable, or whether the Commission abused its discretion." *Dep't of Soc. Servs. v. Our Lady of Mercy Home,* 803 S.W.2d 72, 75 (Mo.App. W.D.1990). However, where, as here, the "administrative agency's decision is based upon its interpretation or application of the law, then the matter is for the independent judgment of the reviewing court." *Mo. State Div. of Family Servs. v. Barclay,* 705 S.W.2d 518, 520 (Mo.App. W.D.1985). We are not bound by the agency's interpretation, and we give no deference to the agency's or circuit court's conclusions of law. *Maples v. Dep't of Soc. Servs., Div. of Family Servs. of State of Mo.,* 11 S.W.3d 869, 871 (Mo.App. S.D.2000).

### Argument

The Agency's sole point on appeal is that its definition of "institutionalized spouse" as stated in 13 CSR 40–2.030(13)(A)(3)(B) does not unlawfully alter the definition found in 42 U.S.C. 1396r–5 of the Social Security Act, Title XIX, and is in compliance with federal statutes and rules as authorized under section 208.010.6 RSMo, for the purpose of qualifying for medical assistance under the state's Medicaid program. Thus, the Agency argues, we should affirm the decision of the Director.

In *Missouri Department of Social Services, Division of Medical Services v. Great Plains Hospital, Inc.,* 930 S.W.2d 429, 431 (Mo.App. W.D.1996), we described the states' relationship to the federal Medicaid program as follows:

> The Medicaid Act, 42 U.S.C. Section 1396 *et seq.* (1992), authorizes federal grants to help states provide medical assistance to certain low-income individuals. Participation in the program is voluntary, but in exchange for federal funding, participating states must com-

ply with the requirements imposed by the Act and with regulations promulgated by the Secretary of Health and Human Services.

The state has enacted statutes and regulations to comply with the federal Medicaid Act so that it may receive federal funds. *Psychiatric Healthcare Corp. of Mo.*, 100 S.W.3d at 894.

Section 208.010.6 RSMo provides, in relevant part, as follows:

Beginning September 30, 1989, when determining the eligibility of institutionalized spouses, as defined in 42 U.S.C. Section 1396r–5, for medical assistance benefits as provided for in section 208.151 and 42 U.S.C. Sections 1396a et seq., the division of family services shall comply with the provisions of the federal statutes and regulations. As necessary, the division shall by rule or regulation implement the federal law and regulations which shall include but not be limited to the establishment of income and resource standards and limitations. The division shall require:

(1) That at the beginning of a period of continuous institutionalization that is expected to last for thirty days or more, the institutionalized spouse, or the community spouse, may request an assessment by the division of family services of total countable resources owned by either or both spouses[.]

The federal law defining "institutionalized spouse," 42 U.S.C. Section 1396r–5(h), provides as follows:

(1) The term "institutionalized spouse" means an individual who—

(A) is in a medical institution or nursing facility or who (at the option of the State) is described in section 1396a(a)(10)(A)(ii)(VI) of this title, and

(B) is married to a spouse who is not in a medical institution or nursing facility;

but does not include any such individual who is not likely to meet the requirements of subparagraph (A) for at least 30 consecutive days.

The state regulation defining "institutionalized spouse," 13 CSR 40–2.030(13)(A), provides as follows:

3. Institutionalized spouse shall mean a claimant who resides in—

A. A medical hospital;

B. A Medicaid-certified bed in an NF [nursing facility], with an expected stay of at least thirty (30) days; or

C. His/her own home and is assessed by the Division of Disability and Senior Services as needing both an NF level-of-care as defined in 19 CSR 30–81.030 and home- and community-based waiver services and is assessed to need these services for at least thirty (30) days, and is married to a person who meets the definition of a community spouse in paragraph (13)(A)2[.]

The state regulation requires that an "institutionalized spouse" reside in a Medicaid-certified bed, while the federal law does not contain this requirement. This difference is the crux of the controversy in this case.

■ The Agency contends that 13 CSR 40–2.030(13)(A)(3)(B) expands on what it means to be "in a medical institution or nursing facility" under 42 U.S.C. 1396r–5(h)(1), and, thus, the language in its definition acts as a qualifier to ensure compliance with the entire Medicaid regulatory scheme. The Agency explains that under the language of the Medicaid program's regulatory scheme, before any nursing facility can be reimbursed for medical services provided, the facility, or a distinct part thereof, has to be certified to participate in the Medicaid program and must meet all state and federal requirements. Pursuant to federal regulations, a nursing facility may be reimbursed only for ser-

vices provided while a person occupies a Medicaid-certified bed. Regardless of whether Gee was eligible for Medicaid services, the Agency contends, the nursing home could be reimbursed for services only if they were provided at a Medicaid-certified bed, and Gee did not occupy a Medicaid-certified bed. Therefore, the Agency asserts that it had to terminate the division of assets and deny Gee's application until such time as she was a resident of the Medicaid-certified part of Bishop Spencer Place. Had it allowed payments to be made to Bishop Spencer Place on behalf of Gee, the Agency believes it would have violated the federal regulatory scheme authorizing payments only to a facility, or the part of a facility, that is certified to participate in the Medicaid program. The Agency argues that its rule that leads to that result complies with the applicable federal regulatory scheme under the Social Security Act, Title XIX, as it applies to residents of nursing facilities.

We find that the Agency's contention that it would be in violation of federal law if it were to allow payments to be made to Bishop Spencer Place while Gee is not in a Medicaid-certified bed is irrelevant to the issue at bar. The issue before us is whether the Division is required to use the definition of "institutionalized spouse" contained in 42 U.S.C. Section 1396r–5(h)(1) in connection with an individual's division of assets for the purposes of determining that individual's Medicaid eligibility. This is a totally separate issue from an institution's entitlement to Medicaid reimbursement once an individual is deemed eligible for Medicaid.

Gee contends the Agency erred in deactivating her division of assets on the ground that she did not meet the definition of an "institutionalized spouse" since she was not in a Medicaid-certified bed because that decision was not authorized by law in that the Agency cannot legally use

the Code of State Regulations or the Agency's manual to alter the federal definition of an "institutionalized spouse" as referenced in section 208.010.6(1) RSMo, which does not require the person to be in a Medicaid-certified bed.

Under federal law, the definition of "institutionalized spouse" does not require that the spouse be in a Medicaid-certified bed in order to be eligible for a division of assets. The addition of that requirement in Missouri's Code of State Regulations was not authorized by the statutes which enabled the Department of Social Services to promulgate regulations, Gee contends.

■■■ "An administrative agency enjoys no more authority than that granted by statute." *Termini v. Mo. Gaming Comm'n,* 921 S.W.2d 159, 161 (Mo.App. W.D.1996). "Regulations may be promulgated only to the extent of and within the delegated authority of the statute involved." *Id.*

Section 208.010.6 RSMo clearly states that "when determining the eligibility of institutionalized spouses, *as defined in 42 U.S.C. Section 1396r–5,* for medical assistance benefits ... the division of family services shall comply with the provisions of the federal statutes and regulations." (Emphasis added.) This is a specific and unambiguous mandate from the Missouri General Assembly that Missouri's definition of "institutionalized spouse" must mirror the federal definition.

We, therefore, agree with Gee that the Agency exceeded the authority granted to it under section 208.010.6 RSMo by adding the requirement that an "institutionalized spouse" must reside in a Medicaid-certified bed. Because it is undisputed that, since September 2003, Lillian Gee has been in a nursing facility and married to an individual who is not in a medical institution or nursing facility, she is an "institutionalized spouse" pursuant to 42 U.S.C. Section 1396r–5(h)(1). Thus, the Agency's decision

to deactivate Gee's division of assets was not authorized by law.

The Agency additionally contends that its definition of "institutionalized spouse" did not violate the federal regulatory scheme because Missouri is a Section 209(b) state under the Social Security Act. The Agency notes that the Social Security Act was amended in 1972, combining three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI), and requiring states to apply the eligibility standards found under SSI programs to all applicants. Under 42 U.S.C. Section 1396a(f) (Section 209(b)), states could elect to provide Medicaid assistance only to individuals who would have been eligible under the state's Medicaid plan in effect on January 1, 1972, as opposed to using the more liberal eligibility standards under SSI. States that elected this option are known as Section 209(b) states.

The Agency cites *Mowbray v. Kozlowski,* 914 F.2d 593 (4th Cir.1990), in support of its contention that because Missouri is a Section 209(b) state, the regulation the Agency implemented before 1972 remains valid. In *Mowbray,* 914 F.2d at 594, the court considered whether certain Virginia criteria for Medicaid eligibility, which were more restrictive than the corresponding federal eligibility criteria, violated the federal Medicaid statute. The court noted that Section 209(b) permits certain states to employ Medicaid eligibility criteria that are more restrictive than the corresponding federal eligibility criteria. *Id.* Specifically, the issue in *Mowbray* was whether Virginia's criteria violated Section 303(e) of the Medicare Catastrophic Coverage Act, 42 U.S.C. Section 1396a(r)(2), which was enacted after Section 209(b) and which provides that a state's Medicaid eligibility "may be less restrictive, and shall be no more restrictive" than the federal criteria.

*Id.* The court concluded that Section 303(e) did not partially repeal Section 209(b), and, thus, in that instance, Virginia's more restrictive Medicaid eligibility criteria did not violate the language of Section 303(e). *Id.* at 601.

As a Section 209 state, the Agency states, Missouri applies eligibility standards that were in effect on January 1, 1972. Under those standards, an applicant for Medicaid assistance is required to occupy a Medicaid-certified bed in order to be eligible for Medicaid benefits. The Agency rule to that effect, promulgated and retained under the Section 209(b) election, is authorized by law and does not unlawfully alter the federal definition, the Agency contends. As a result of Missouri's Section 209(b) election, the Agency argues, it was not required to change its definition of "institutionalized spouse" to mirror the federal definition; rather, the state could retain the definition requiring that an applicant occupy a Medicaid-certified bed in effect on January 1, 1972. Again, the Agency contends, because Gee was not occupying a Medicaid-certified bed at Bishop Spencer Place at the time of her application, as required by that definition, the Director's decision was authorized by law and should be upheld.

The Agency further contends that Congress did not clearly and unambiguously require Missouri's definition of "institutionalized spouse" to mirror the definition found in 42 U.S.C. Section 1396r–5. The Agency contends that if Congress intends to impose a condition on the grant of federal money, it must do so unambiguously and must "speak with a clear voice." *Mowbray,* 914 F.2d at 598 (citing *Pennhurst State Sch. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694, (1981)). If Congress intended Missouri to apply the definition of institutionalized spouse found in Section 1396r–5, Congress would have

said so unambiguously, the Agency contends. The Agency argues that neither Congress nor the Missouri General Assembly mandated that the agency's definition of institutionalized spouse mirror the definition found in Section 1396r–5, and the Director's decision, therefore, was not unlawful or unauthorized and should be upheld.

The Agency ignores the clear edict of section 208.010.6 RSMo, which specifically requires that *"when determining the eligibility of institutionalized spouses, as defined in 42 U.S.C. Section 1396r–5,* for medical assistance benefits as provided for in section 208.151 and 42 U.S.C. Sections 1396a et seq., the division of family services *shall comply with the provisions of the federal statutes and regulations."* (Emphasis added.) Regardless of any effect of Section 209(b) regarding pre–1972 Missouri regulations, section 208.010.6 RSMo now explicitly requires that the Agency must comply with federal law, specifically the law that defines "institutionalized spouse," when determining the eligibility of institutionalized spouses for medical assistance benefits.

We conclude that the Agency exceeded its authority under section 208.010.6 RSMo by adding to its regulation the requirement that an "institutionalized spouse" must reside in a Medicaid-certified bed. Because Lillian Gee is an "institutionalized spouse" pursuant to 42 U.S.C. Section 1396r–5(h)(1), the Agency erred in deciding to deactivate Gee's division of assets.

We affirm the judgment of the circuit court ordering the Agency to process Gee's division of assets.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.